Christian Schreiber (Bar No. 245597)
christian@osclegal.com
OLIVIER SCHREIBER & CHAO LLP
201 Filbert Street, Suite 201
San Francisco, California 94133
Tel:    (415) 484-0980
Fax:    (415) 658-7758

Elliot Conn (Bar No. 279920)
elliot@connlawpc.com
CONN LAW, PC
354 Pine St., 5th Floor
Tel:    (415) 417-2780
Fax:    (415) 358-4941

*Attorneys for Plaintiff Jeremy Stanfield and the Proposed Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| JEREMY STANFIELD, on behalf of himself and all others similarly situated<br><br>Plaintiff,<br><br>v.<br><br>TAWKIFY, INC.,<br><br>Defendants. | Case No. 3:20-cv-07000-WHA<br><br>CLASS ACTION<br><br>**FIRST AMENDED COMPLAINT FOR VIOLATIONS OF:**<br><br>1. **DATING SERVICES CONTRACT ACT, CIV. CODE § 1694, *ET SEQ.***<br>2. **UNFAIR COMPETITION LAW, BUS. & PROF. CODE § 17200, *ET SEQ.***<br>3. **CONSUMERS LEGAL REMEDIES ACT, CIV. CODE § 1750, *ET SEQ.***<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff JEREMY STANFIELD ("Plaintiff"), on behalf of himself and all others similarly situated, hereby alleges as follows against Defendant TAWKIFY, INC. ("Defendant" or "Tawkify"):

**PRELIMINARY STATEMENT**

1. The Dating Services Contract Act, Cal. Civ. Code section 1694, *et seq.* ("DSCA" or the "Act") is a non-waivable consumer protection statute designed to protect the rights of consumers who use a business for dating, matrimonial, or social referral services.

2. The DSCA was passed in 1988 in response to the proliferation of businesses offering to assist consumers with purported "matchmaking" expertise. The Act was amended in 2017 as the number of online dating services and mobile phone-based "social applications" sharply increased. Among its purposes, the DSCA ensures that consumers are provided with adequate disclosures, including the right to revoke an offer or cancel the dating service.

3. Defendant Tawkify claims to offer a "concierge, curated date experience." It promises consumers access to a "Romance Rolodex" of more than 500,000 possible matches, and its website claims, "Tawkify is a matchmaking company, not a 'dating site'." It charged some customers, including Plaintiff, $3,700 for six dates (approximately $600 per date) that are organized and planned by its "love experts." Customers pay for each date they go on, which creates a perverse incentive to ensure that the first "matches" are unsuccessful.

4. In reality, Tawkify misrepresents its services to the lovelorn, and its "matchmakers" are merely high-pressure salespeople who earn commissions for selling high-priced dates and ensuring customers go on all their dates. In violation of the DSCA, Tawkify does not provide consumers with the adequate right of cancellation or revocation.

5. This is a class action case to halt Tawkify's unlawful practices, including its violations of the DSCA, Unfair Competition Law, Cal. Business & Professions Code section 17200, *et seq.* ("UCL"), and the Consumers Legal Remedies Act, Cal. Civ. Code section 1750, *et seq.* ("CLRA") Plaintiff seeks treble damages, restitution, declaratory and injunctive relief, and attorneys' fees and costs on behalf of all consumers in the United States who have paid Defendant

1 Tawkify for matchmaking or dating services at any time since four years prior to the filing of this
2 action through the date of judgment (the "Class").

### THE PARTIES

6. Plaintiff Jeremy Stanfield is an individual over the age of 18 who, at all relevant times has resided in Chino, California.

7. Defendant Tawkify, Inc. is a Delaware corporation with its corporate headquarters and principal place of business at 330 Townsend Street in San Francisco, California.

### JURISDICTION AND VENUE

8. This Court has personal jurisdiction over Defendant because it conducts business in this County and District, the unlawful conduct arises under California law, and Defendant directed and committed certain of the unlawful acts alleged herein in this County and District.

9. On October 7, 2020 Defendant removed this matter to this Court on the basis of original jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2). Dkt. 1. Plaintiff does not admit that removal or CAFA jurisdiction are proper.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims in this case occurred in this District.

### FACTS

11. Defendant is an online dating service provider. Tawkify's website states that the services it provides "are less expensive than traditional matchmaking firms with no scary contracts to sign."

12. Defendant boasts that its customers will benefit from the company's "Romance Rolodex," which is states "is 500K+ strong and growing like wildfire."

13. In or around June 2020, Plaintiff came across an advertisement for Tawkify on Facebook. He made an online inquiry, and was contacted by one of Tawkify's salespeople, whom the company tout as "expert matchmakers."

14. Plaintiff was asked to purchase a package of six dates. Plaintiff ultimately ended up texting with the Tawkify salesperson on a Friday afternoon. The salesperson aggressively

urged Plaintiff to complete his purchase on the same day and acknowledged that her high-pressure tactics were "unprofessional."

15. On June 29, 2020, Plaintiff purchased a six-date package for $3,700 and electronically signed a "Client Agreement," which is attached to this Complaint as **Exhibit A**. He was "approved" one day later.

16. The "Client Agreement" incorporated, by reference, Tawkify's "Refund Policy," which provides:

> For approved clients, prorated payment for a minimum of three match cycles is retained in all cases, after which clients can request a prorated refund of any unstarted match cycles . . .
>
> Problematic lack of availability or poor date behavior on the client's part can negatively impact our ability to perform services and may, therefore, result in early termination of the client's package without refund. . . .
>
> Approved refunds may take 60 days to post.

17. According to Tawkify's website, "Every client works one-on-one with their own dedicated matchmaker. We perform extensive match recruiting on your behalf, plan the dates for all of your introductions, provide feedback before and after every date. And every match is guaranteed – no smoke and mirrors here."

18. Plaintiff was asked to fill out a personal profile, and to describe himself and the type of woman with whom he sought a match. Plaintiff spoke to his "matchmaker" on or about July 7. Plaintiff's "matchmaker" asked him to describe the type of woman he was seeking to date; Plaintiff engaged in a back and forth dialogue with the Tawkify "matchmaker" about his profile and his preferences for a date.

19. The "matchmaker" ignored all of Plaintiff's preferences in setting up the first date on July 11. At the conclusion of the date, Plaintiff contacted the matchmaker on July 12 to complain and Plaintiff was given a refund credit back to his account for the poor match.

20. Plaintiff's second date on July 14 was equally incompatible. Again, at the conclusion of the date, Plaintiff contacted the matchmaker to complain and was again given a refund credit back to his account for the poor match.

21. Plaintiff's complaints were mishandled. Tawkify representatives were late to appointments they scheduled, and Plaintiff notified Tawkify by email on July 17, 2020 and again the following day that he wanted to cancel his contract and wanted a full refund of the $3,700 that he had paid. At the time of cancellation, Plaintiff had a credit for all six matches and was entitled to receive a full refund.

22. On July 22, 2020, Tawkify informed Plaintiff that "Your refund has been submitted to Accounting. Once your refund is cleared it takes 45-60 days for processing and will be returned to the card used for purchase."

23. Plaintiff complained about the delay and on July 28, 2020 was told by Tawkify that "I've reached out to Accounting asking them to prioritize your refund based on your experience. They let me know there's a chance they can get it out in the next three weeks or less."

24. On August 1, 2020, Plaintiff received a partial refund of $1,900. As of the date of the filing of the complaint in this matter, Plaintiff had not received the remaining $1,800 owed.

## THE DATING SERVICES CONTRACT ACT

25. The DSCA broadly applies to any "dating service contract," that is, "any contract with any organization that offers dating, matrimonial, or social referral services by any of the following means: (1) An exchange of names, telephone numbers, addresses, and statistics. (2) A photograph or video selection process. (3) Personal introductions provided by the organization at its place of business. (4) A social environment provided by the organization intended primarily as an alternative to other singles' bars or club-type environments." Cal. Civ. Code § 1694(a).

26. In 2017, the DSCA was amended to include application to "online dating [services]," defined as, "any person or organization engaged in the business of offering dating, matrimonial, or social referral services online, where the services are offered primarily online, such as by means of an Internet Web site or a mobile application." Cal. Civ. Code § 1694(b).

27. The DSCA gives buyers the right to cancel a dating service contract or offer and receive a full refund, until midnight of the third business day after the day on which the buyer signs an agreement or offer to purchase those services. Cal. Civ. Code § 1694.1(a).

28. The right to cancel must be set forth in the underlying contract, which must be in writing, and in the case of an electronic dating service contract, may be an electronic writing made available for viewing online. Cal. Civ. Code § 1694.2(a).

29. A copy of the contract must be provided to the buyer at the time he or she signs the contract, but online dating services shall not be required to provide a copy of the contract if "(1) the contract is available through a direct link that is provided in a clear and conspicuous manner on the Internet Web site page where the buyer provides consent to the agreement and, (2) upon request by the buyer, the online dating service provides a PDF format or retainable digital copy of the contract." Cal. Civ. Code § 1694.2(a).

30. Online dating services contract must contain the following conspicuous statement:

> You, the buyer, may cancel this agreement, without any penalty or obligation, at any time prior to midnight of the original contract seller's third business day following the date of this contract, excluding Sundays and holidays. To cancel this agreement, mail or deliver a signed and dated notice, or send a telegram which states that you, the buyer, are canceling this agreement, or words of similar effect. This notice shall be sent to:
>
> _____
>
> (Name of the business that sold you the contract)
>
> _____
>
> (Address of the business that sold you the contract)

Cal. Civ. Code § 1694.2(b)

31. This statement must either be on the face of the dating services contract, in close proximity to the space reserved for the signature of the buyer, and in at least 10-point boldface type; or for an online dating service contract may be included in a clear and conspicuous manner in a stand-alone first paragraph of the contract. Cal. Civ. Code § 1694.2(b)(1), (2).

32. Dating service contracts must contain on the first page, in a type size no smaller than that generally used in the body of the document, the name and address of the dating service operator to which the notice of cancellation is to be mailed, and the date the buyer signed the contract. Cal. Civ. Code § 1694.2(c)(1). In the case of an online dating service contract, the name of the dating service operator and the email address that can be used for cancellation may appear in the first paragraph of the contract. Cal. Civ. Code § 1694.2(c)(2)

33. Every dating service contract must contain language providing that "[i]f by reason of death or disability the buyer is unable to receive all services for which the buyer has contracted, the buyer and the buyer's estate may elect to be relieved of the obligation to make payments for services other than those received before death or the onset of disability," except that "[i]f the physician determines that the duration of the disability will be less than six months, the seller may extend the term of the contract for a period of six months at no additional charge to the buyer in lieu of cancellation." Cal. Civ. Code §§ 1694.3(a)(1),(4). Dating service contracts must contain language providing that "[i]f the buyer has prepaid any amount for services, so much of the amount prepaid that is allocable to services that the buyer has not received shall be promptly refunded to the buyer or his or her representative."

34. Any dating service contract that does not comply with the DSCA is void and unenforceable. Cal. Civ. Code §1694.4(a)

35. Any contract for dating services entered into under willful and fraudulent or misleading information or advertisements of the seller is void and unenforceable. Cal. Civ. Code § 1694.4(b)

36. If a dating service contract is not in compliance with the DSCA, the buyer may, at any time, cancel the contract. Cal. Civ. Code § 1694.2(e)

37. Upon cancellation, the buyer shall be entitled to receive a refund or refund credit of that portion of the cash price as is allocable to the services not actually received by the buyer. Civ. Code § 1694.4(d). And all refunds must be made within 10 days of receipt of the notice of cancellation. Civ. Code § 1694.1(e).

## CLASS ACTION ALLEGATIONS

38. Plaintiff brings this class action for violations of the Dating Services Contract Act, Cal. Civ. Code section 1694, *et seq.* ("DSCA"), the Unfair Competition Law, Bus. & Prof. Code section 17200, *et seq.* ("UCL"), and Consumers Legal Remedies Act, Civ. Code section 1750, *et seq.* ("CLRA") and pursuant to Fed. R. Civ. Proc. 23, on behalf of the following Class:

> All consumers in the United States who have paid Defendant Tawkify for matchmaking or dating services at any time since four years prior to the filing of this action through the date of judgment (the "Class").

39. This action may properly be maintained as a class action pursuant to Fed. R. Civ. Proc. 23(a), (b)(2), (b)(3), and/or (c)(4).

40. <u>Numerosity</u>. The Class is so numerous that joinder of all members is impracticable. Plaintiff is informed and believes, and on that basis alleges, that during the Class period there are thousands of individuals who satisfy the definition of the Class.

41. <u>Ascertainability</u>. The identity of Class members is ascertainable through Tawkify's records or by public notice.

42. Community of Interest.

    a. *Typicality*. Plaintiff's claims are typical of Class members' claims. Plaintiff, like other Class members, was subjected to Tawkify's policies and practices that violated California law. Plaintiff paid Tawkify for services, cancelled his contract and did not receive a complete refund. Plaintiff's claims were and are typical of those of the Class members.

    b. *Adequacy*. Plaintiff will fairly and adequately represent and protect the interests of the Class members. Plaintiff's counsel are experienced in complex consumer class actions and will fairly and adequately represent and protect the interests of the Class members.

    c. *Predominance*. Common questions of law and fact exist as to members of the Class that predominate over any individualized questions, including the following:

- Whether Tawkify's dating services contracts failed to include the following

statement: "You, the buyer, may cancel this agreement, without any penalty or obligation, at any time prior to midnight of the original contract seller's third business day following the date of this contract, excluding Sundays and holidays. To cancel this agreement, mail or deliver a signed and dated notice, or send a telegram which states that you, the buyer, are canceling this agreement, or words of similar effect."

- Whether Tawkify's dating services contracts failed to contain the language required by Cal. Civ. Code section 1694.3(a).
- Whether Tawkify violated the DSCA;
- Whether Tawkify violated the UCL;
- Whether Tawkify violated the CLRA;
- Whether Plaintiff and the Class are entitled to injunctive relief;
- The proper measure of damages sustained by members of the Class.

43.  <u>Superiority</u>. Class treatment would benefit the courts and Class members. Certification of the Class would provide substantial benefits to the courts and Class members. The damages suffered by individual Class members are relatively small compared to the significant expense and burden of individual prosecution of this litigation. In addition, class certification will obviate the need for unduly duplicative litigation which might result in inconsistent judgments about Tawkify's practices.

<b><u>FIRST CAUSE OF ACTION</u></b><br><b><u>By Plaintiff and the Class Against Defendant</u></b><br><b><u>Violations of the Dating Services Contract Act</u></b><br><b><u>(Cal. Civ. Code § 1694, <i>et seq.</i>)</u></b>

44.  Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein, and further alleges as follows.

45.  The Dating Services Contract Act, Cal. Civ. Code section 1694, *et seq.*, governs a consumer's rights under "any contract with any organization that offers dating, matrimonial, or

social referral services by" a variety of means, including an exchange of names, telephone numbers, addresses, and statistics," and "personal introductions provided by the organization."

46. Defendant is an "online dating service" as that term is defined under Cal. Civ. Code section 1694(b) in that it is an organization engaged in the business of offering dating, matrimonial, or social referral services online, where the services are offered primarily online, such as by means of an Internet Web site or a mobile application.

47. Defendant's "Client Agreement," and the "Tawkify Refund Policy" are "dating service contracts" as that term is defined in Cal. Civ. Code section 1694(a) in that they are contracts with an organization that offers dating, matrimonial, or social referral services.

48. Defendant has systematically violated, and continues to systematically violate Cal. Civ. Code section 1694.1 by failing to allow Plaintiff and the members of the Class to cancel their dating service contracts, until midnight of the third business day after the day on which the buyer signs an agreement or offer to purchase those services. Per Tawkify's Refund Policy, if Tawkify customers cancel, a "prorated payment for a minimum of three match cycles is retained in all cases."

49. Defendant has systematically violated, and continues to systematically violate Cal. Civ. Code section 1694.2(b) by failing to provide Plaintiff and the members of the Class with contracts that contain in a clear and conspicuous manner in a stand-alone first paragraph of the contract, the following statement:

> You, the buyer, may cancel this agreement, without any penalty or obligation, at any time prior to midnight of the original contract seller's third business day following the date of this contract, excluding Sundays and holidays. To cancel this agreement, mail or deliver a signed and dated notice, or send a telegram which states that you, the buyer, are canceling this agreement, or words of similar effect. This notice shall be sent to:
>
> _____
> (Name of the business that sold you the contract)
>
> _____
> (Address of the business that sold you the contract)

50. Defendant has systematically violated, and continues to systematically violate Cal. Civ. Code section 1694.2(c) by failing to provide Plaintiff and the members of the Class with contracts that provide, in the first paragraph of the contract, the name of the dating service operator and the email address that can be used for cancellation.

51. Defendant has systematically violated, and continues to systematically violate, Cal. Civ. Code section 1694.3(a) by failing to provide Plaintiff and the members of the Class with contracts that contain the required language related to the buyer's death or disability.

52. Pursuant to Cal. Civ. Code section 1694.4(a), because Defendant has systemically violated, and continues to systemically the DSCA, its dating service contracts are void and unenforceable.

53. Pursuant to Cal. Civ. Code section 1694.2(e), because Defendant's dating service contracts fail to contain the disclosure required by Cal. Civ. Code section 1694.2(b), Plaintiff and the members of the Class may cancel their contract at any time and are "entitled to receive a refund or refund credit of that portion of the cash price as is allocable to the services not actually received by the buyer." Cal. Civ. Code § 1694.4(d). This refund must be provided within 10 days of receipt of the notice of cancellation. Cal. Civ. Code § 1694.1(e).

54. Plaintiff cancelled his service.

55. In spite of Plaintiff's cancellation, Defendant failed to return all moneys paid by Plaintiff within 10 days of receipt of the notice of cancellation. Defendant fails to timely return the money of other Class members pursuant to the requirements of the DSCA. Defendant has also wrongfully retained a portion of the cash price as allocable to the services not actually received by the Plaintiff and the Class.

56. Plaintiff and the Class seek and are entitled to three times their damages, and may recover attorneys' fees in connection with this cause of action under Cal. Civ. Code section 1694.4(c).

Wherefore, Plaintiff prays for relief as set forth below.

**SECOND CAUSE OF ACTION**
**By Plaintiff and the Class Against Defendant**
**Violations of the Unfair Competition Law**
**(Cal. Bus. & Prof. Code § 17200 *et seq*.)**

57. Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein, and further alleges as follows.

58. California Business and Professions Code section 17200, *et seq*., often referred to as the "Unfair Competition Law" or "the UCL," defines unfair competition to include any unlawful, unfair, or fraudulent business act or practice. The UCL provides that a court may order injunctive relief and restitution as remedies for any violations of the UCL.

59. Beginning on an exact date unknown to Plaintiff, but at all times relevant herein and during the four years preceding the filing of the Complaint in this action, Defendant committed and it continues to commit acts of unfair competition proscribed by the UCL, including the practices alleged herein in connection with its provision of "matchmaking services."

60. The business acts and practices alleged herein constitute unfair business practices in that said acts and practices offend public policy and are substantially injurious to the public.

61. The business acts and practices alleged hereinabove violate the public policies expressed in the DSCA, Cal. Civ. Code section 1694, *et seq*.

62. The business acts and practices alleged herein above constitute unlawful business practices in that Defendant has violated the DSCA, Cal. Civ. Code section 1694, *et seq*. and the Consumers Legal Remedies Act, Cal. Civ. Code section 1750, *et seq*. as set forth below.

63. The business acts and practices alleged herein constitute fraudulent business practices in that said acts and practices are likely to deceive consumers as to their legal rights and obligations, and by use of such deception, may preclude such individuals from exercising legal rights to which they are entitled. In particular, Tawkify's failure to include any terms for revocation or cancellation of its contract misrepresents the rights of consumers as does its unlawful refund policy.

64. The unlawful, unfair and fraudulent business acts and practices of Tawkify described herein present a continuing threat in that Tawkify is currently engaging in such acts and

practices, and will persist and continue to do so unless and until an injunction is issued by this Court.

65. Plaintiff and members of the Class have lost money or property, including: (a) amounts improperly paid to and/or retained by Tawkify and/or its agents; (b) costs associated with efforts to respond to or challenge Tawkify's policies. Plaintiff has lost money as a result of Tawkify's conduct and has been deprived of the $1,800 refund that Tawkify wrongfully retained.

66. As a direct and proximate result of the acts and practices described herein, Tawkify and its agents have received and collected money and/or have otherwise deprived Plaintiff and Class members of money or property. Tawkify should be ordered to provide full and complete restitution of all amounts collected from Class members.

67. Pursuant to Cal. Business and Professions Code section 17203, Plaintiff seeks an order enjoining Tawkify from engaging in such acts and practices as hereinabove alleged, and providing appropriate restitution to Plaintiff and members of the Class.

68. Pursuant to Cal. Code of Civil Procedure section 1021.5, Plaintiff seeks recovery of attorneys' fees, costs and expenses incurred in the filing and prosecution of this action. Plaintiff does not seek any relief greater than or different from the relief sought for the Class.

Wherefore, Plaintiff prays for relief as set forth below.

**THIRD CLAIM FOR RELIEF**
**By Plaintiff and the Class Against Defendant**
**Violations of Consumers Legal Remedies Act**
**(Cal. Civ. Code § 1750, *et seq.*)**

69. Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein, and further alleges as follows.

70. At all relevant times:

    a. The online dating service provided by Defendant is a service that Tawkify has marketed and that Plaintiff and Class members purchased for personal, family, or household purpose and, as such, are a "service" as defined by Cal. Civil Code section 1761(a);

      b.      Plaintiff and Class members are individuals who have contracted for online dating services for personal, family or household purposes and, as such, are "consumers" defined in Cal. Civil Code section 1761(d);

      c.      There were agreements between Tawkify, Inc. on the one hand and Plaintiff and Class members on the other and, as such, their relationship constitutes a "transaction" as that term is defined in Cal. Civ. Code section 1761(e); and

      d.      Tawkify is a corporation and, as such, is a "person" as that term is defined in Cal. Civ. Code section 1761(c).

71. In offering online dating services, Tawkify has represented, and will continue to represent, directly or by implication, that it complies with California law, including the DSCA. Notwithstanding that representation, Tawkify's dating services contracts fail to comply with the requirements of the DSCA, and Tawkify fails to provide for a right of cancellation or revocation under the DSCA. In addition, Tawkify's refund policy provides that a "prorated payment for a minimum of three match cycles is retained in all cases." This is contrary to the DSCA which provides that in the event of cancellation, "the buyer shall be entitled to receive a refund or refund credit of that portion of the cash price as is allocable to the services not actually received by the buyer." Cal. Civ. Code section 1694.4(d).

72. By virtue of this ongoing practice and course of conduct, Tawkify has violated and will continue to violate section 1770(a)(14) of the CLRA by representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law. Specifically, Tawkify's refund policy provides that a "prorated payment for a minimum of three match cycles is retained in all cases" and Tawkify retains the right to terminate services without refund. This is contrary to the DSCA which provides that in the event of cancellation, "the buyer shall be entitled to receive a refund or refund credit of that portion of the cash price as is allocable to the services not actually received by the buyer." Cal. Civ. Code § 1694.4(d). In addition, in the event of cancellation Tawkify is required to issue refunds within 10

days, per Cal. Civ. Code section 1694.1(e). Tawkify's refund policy provides that "Approved refunds may take 60 days to post."

73. Defendant's violations of the CLRA present a continuing threat to Plaintiff and the Class in that Defendant continues to engage in the above-referenced acts and practices, and unless enjoined from doing so by this Court, will continue to do so.

74. On August 17, 2020, August 25, 2020, and September 11, 2020, pursuant to Civil Code section 1782(a)(2), Plaintiff sent Defendant Tawkify written notice of the violations of Civil Code section 1770 alleged above and provided Defendant with an opportunity to correct or otherwise rectify the problems alleged herein. Defendant has not availed itself of this opportunity. Accordingly, Plaintiff seeks an order awarding actual damages, equitable relief, as well as an award of attorneys' fees and costs pursuant to Civil Code section 1780, subdivisions (a) and (e).

75. Pursuant to section 1780(d) of the CLRA, attached hereto as **Exhibit B** is the affidavit showing that this action has been commenced in the proper forum.

76. Plaintiff is entitled to an award of attorneys' fees and costs pursuant to Cal. Civ. Code section 1780(d).

WHEREFORE, Plaintiff prays for the relief set forth below.

## PRAYER FOR RELIEF

WHEREFORE, having stated his Complaint, Plaintiff respectfully prays for judgment against Defendants as follows:

   A. For an Order certifying the Class;

   B. For an Order declaring Defendant's conduct unlawful;

   C. For preliminary, permanent and mandatory injunctive relief prohibiting Defendant, its officers, agents and all those acting in concert with it, from committing in the future those violations of law herein alleged;

   D. For treble damages in an amount to be determined at trial;

   E. For pre- and post-judgment interest according to proof;

   F. For costs of suit including reasonable attorneys' fees, costs, and expenses under

Cal. Civ. Code section 1694.4(c), Cal. Civ. Code section 1780(d), Cal. Code of Civ. Proc. section 1021.5, or any other applicable provision of law; and

    G.  For all other relief this Court may deem just, equitable, and proper.

Dated November 17, 2020                    Respectfully submitted,

OLIVIER SCHREIBER & CHAO LLP
CONN LAW, PC

By: *[signature]*
Christian Schreiber

*Attorneys for Jeremy Stanfield and the Proposed Class*

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a jury trial on all claims so triable.

Dated: November 17, 2020                  Respectfully submitted,

OLIVIER SCHREIBER & CHAO LLP
CONN LAW, PC

By: *[signature]*
Christian Schreiber

*Attorneys for Jeremy Stanfield and the Proposed Class*

# EXHIBIT A

# Client Agreement

Last Updated June 2020

**Getting started:** Our commitment to new clients begins with sign up and approval, as teams begin collaborating on your matchmaking journey. An initial delay in the process is rare, but sometimes occurs and in no way impacts total match count or intended cadence once we begin. All work performed during this initial ramp-up period is included in your first match cycle and is therefore non-refundable, but there are no additional onboarding fees.

**Your matchmaker:** We put careful thought into the selection of your matchmaker. In the event we believe pairing you with a different matchmaker may be more beneficial to your dating goals, we may do so during your experience and will notify you of the change. For whatever reason, if you would like a different matchmaker, you may request a transition to a different matchmaker from our Customer Success team. Our matchmakers connect with clients over video throughout the US without geographic limitations.

**The process:** During each match cycle, your matchmaker searches profiles in our confidential database to identify potentially suitable candidates, then personally screens them for additional indicators before selecting a match. A candidate may include anyone in our database, client and/or non-client, with the goal of best fit in mind. A date is planned to introduce you to each selected match, and your matchmaker coordinates the details. Contact info, profile details/photos, and identifying info are not shared, per our commitment to the confidentiality of all in our community. Feedback afterward informs your next match cycle(s) and contact info can then be exchanged if both parties agree.

**Match candidate database:** Potential match options within our pool of members and clients are enhanced by a proactive search; however, matches are only ever made with profiled and pre-screened candidates. Schedule coordination: We specialize in busy clients, and work to accommodate individual schedules as best we can. Informing your matchmaker in advance of schedule or availability conflicts helps avoid delays, cancelations, and potential disappointment. Should you experience an unexpected conflict and need to cancel a scheduled date, 48-hour notice prevents the forfeiture of that match from your total.

If you'll be unavailable for 3 or more weeks, you can pause future match cycles without altering your match count by emailing our Customer Success team. You may "pause" up to 3 months at a time during any 3-month period. Your package is marked complete after 3 months if we do not hear from you to either resume your experience or extend your pause.

**Participation notes:** We don't often experience collaboration challenges with our clients, and certainly don't anticipate we will in your case, but we do reserve the right to terminate any client package without refund should problematic availability, match refusals or cancelations, or inappropriate behavior toward our staff or members of our community become an issue.

Your client experience is governed by our [Refund Policy](). If you have any questions or concerns relative to these guidelines, please click [here]() or email us at [customersuccess@tawkify.com]().

Confirmed at July 13, 2020 4:05 pm PST

# EXHIBIT B

AFFIDAVIT OF VENUE BY PLAINTIFF JEREMY STANFIELD

I, Jeremy Stanfield, declare:

1. I am a Plaintiff in the above-entitled action. The complaint filed contains claims for violations of the Consumer Legal Remedies Act against Tawkify, Inc. ("Tawkify"), a Delaware corporation doing business nationwide, and headquartered in San Francisco, California.

2. These claims arise of out of my agreement to purchase online dating services from Tawkify, and my subsequent attempt to cancel my contract. I purchased this service for personal use.

3. I purchased this service after seeing an advertisement on Facebook, and communicating with a Tawkify salesperson. I understand Tawkify is headquartered in San Francisco, which is where I understand its customer service emails and sales emails are generated.

4. I am a resident of Chino, California. At the time I saw the Facebook ad and communicated with Tawkify, I was living in Chino, which is in San Bernardino County. By using the Tawkify website and purchasing its online dating service, I had to agree to Tawkify's Terms of Use, which makes me subject to California law and which requires me to bring an action in San Francisco County.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing Declaration is true and correct and was executed by me on the date below.

Date: August 14, 2020

*Jeremy Stanfield* (DocuSigned)

Jeremy Stanfield

EXHIBIT B AFFIDAVIT OF JEREMY STANFIELD RE VENUE