**NELSON MULLINS RILEY & SCARBOROUGH LLP**
Jahmy S. Graham (SBN 300880)
jahmy.graham@nelsonmullins.com
Priscilla Szeto (SBN 305961)
priscilla.szeto@nelsonmullins.com
Crispin L. Collins (SBN 311755)
crispin.collins@nelsonmullins.com
19191 South Vermont Avenue, Suite 900
Torrance, CA 90502
Telephone:     424.221.7400
Facsimile:     424.221.7499

Attorneys for Defendant
TAWKIFY, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO

| | |
|---|---|
| JEREMY STANFIELD, on behalf of himself and all others similarly situated,<br><br>      Plaintiff,<br><br> v.<br><br>TAWKIFY, INC. and DOES 1 -25,<br><br>      Defendants. | Case No. 3:20-cv-07000-WHA<br><br>**DEFENDANT TAWKIFY, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Filed concurrently with the Declaration of Kellie Ammerman; and [Proposed] Order]<br><br>Judge:   Hon.  William H. Alsup<br>Hearing Date:  January 14, 2021<br>Hearing Time:  8:00 a.m.<br>Courtroom:  12<br><br>Date Removed: October 7, 2020<br>Date Filed:  August 17, 2020 |

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on January 14, 2021 at 8:00 a.m. or as soon thereafter as this matter may be heard before the Honorable William Haskell Alsup, in Courtroom 12 of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, California, 94102, Defendant Tawkify, Inc. ("Tawkify") will and hereby does move to compel the individual arbitration of this action.

This Motion is brought under the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ("FAA"), on the grounds that Plaintiff Jeremy Stanfield's ("Plaintiff") claims against Tawkify are subject to a binding mandatory arbitration provision and class action waiver. Tawkify operates an online matchmaking service that requires all users to follow a sign-up process before they can access even the basic, free features on its website. Plaintiff agreed to Tawkify's Terms of Use when he created an account. He agreed to it once more before he purchased Tawkify's services. He received a receipt via email that expressly confirmed his assent to the Terms of Use. He then affirmatively agreed (again) to the Terms of Use before he went on his first date with a match. The Terms of Use he agreed to multiple times unequivocally states that the exclusive means for parties to resolve any disputes arising out of or relating to their agreement, Tawkify's services, or Tawkify's website shall be through binding arbitration. The section of the Terms of Use that contains the Arbitration Agreement also contains a waiver of any right to pursue claims or participate in any kind of class or representative action against Tawkify.

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declaration of Kellie Ammerman filed concurrently herewith, all papers on file with the Court, and all evidence and argument presented at or before the hearing on this Motion.

Dated: December 8, 2020          NELSON MULLINS RILEY & SCARBOROUGH LLP

By:    /s/ Jahmy S. Graham
       Jahmy S. Graham
       Priscilla Szeto
       Crispin L. Collins

       Attorneys for Defendant
       TAWKIFY, INC.

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.   RELEVANT FACTUAL BACKGROUND............................................................ 2

III.  LEGAL STANDARD............................................................................................ 5

IV.   LEGAL ARGUMENT .......................................................................................... 7

A.    The Arbitration Agreement Is Governed by the FAA. ................................ 7

B.    The Arbitration Agreement Is Valid and Covers Plaintiff's Claims............ 7

      1.    Validity .............................................................................. 8

      2.    Claims Covered.................................................................. 11

C.    The Arbitration Agreement Is Not Unconscionable. .................................. 12

D.    The Class Action Waiver Is Valid and Enforceable. ................................. 13

V.    CONCLUSION.................................................................................................... 14

1

2

# TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

3

*Ajamian v. CantorCO2e, L.P.*,
    203 Cal. App. 4th 771 (2012) ................................................................ 12

4

5

*Allied-Bruce Terminix Cos. v. Dobson*,
    513 U.S. 265 (1995) .............................................................................. 7

6

7

*Ashbey v. Archstone Prop. Mgmt., Inc.*,
    785 F.3d 1320 (9th Cir. 2015) ............................................................. 6

8

*Bigge Crane & Rigging Co. v. Agility Project Logistics, Inc.*,
    No. 20-CV-01082-DMR, 2020 WL 6710087 (N.D. Cal. Nov. 16, 2020) ........................... 14

9

10

*Brunner v. Lyft, Inc.*,
    No. 19-cv-04808, 2019 WL 6001945 (N.D. Cal. Nov. 14, 2019) ........................... 6

11

12

*Buckeye Check Cashing v. Cardenga*,
    546 U.S. 440 (2006) .......................................................................... 8, 9

13

14

*Burks v. Autonomy, Inc.*,
    2012 WL 13005954 (S.D. Fla. May 15, 2012) ........................................ 7

15

16

*Camilo v. Lyft, Inc.*,
    384 F.Supp.3d 435 (S.D.N.Y. 2019) .................................................. 10

17

*Cape Flattery Ltd. v. Titan Maritime LLC*,
    No. 08-00482, 2012 WL 3113168 (D. Hawaii July 31, 2012) ............... 5

18

19

*Chavarria v. Ralphs Grocery Co.*
    733 F.3d 916 (9th Cir. 2013) ............................................................. 10

20

21

*Chiron Corp. v. Ortho Diagnostic Systems, Inc.*,
    207 F.3d 1126 (9th Cir. 2000) ............................................................. 6

22

*Circuit City Stores, Inc. v. Najd*,
    294 F.3d 1104 (9th Cir. 2002) ........................................................... 11

23

24

*Citizens Bank v. Alafabco, Inc.*,
    539 U.S. 52 (2003) .............................................................................. 7

25

26

*Div. of Labor Law Enforc. v. Transpacific Transp.*,
    69 Cal. App. 3d 268 (1977) ................................................................ 9

27

*Duffens v. Valenti*,
    161 Cal. App. 4th 434 (2008) ............................................................. 8

28

*EEOC v. Waffle House, Inc.*,
   534 U.S. 279  (2002)................................................................................. 11

*Engalla v. Permanente Med. Grp., Inc.*,
   15 Cal.4th 951 (Cal. 1997)......................................................................... 6

*Epic Sys. Corp. v. Lewis*,
   138 S. Ct. 1612 (2018)............................................................................ 9, 13

*Ericksen, Arbuthnot, McCarthy, Kearney & Walsh Inc. v. 100 Oak Street*,
   35 Cal. 3d 312 (1983) ................................................................................ 8

*First Options of Chi., Inc. v. Kaplan*,
   514 U.S. 938 (1995)................................................................................... 8

*Graf v. Match.com, LLC*,
   No. CV 15-3911 PA (MRWX), 2015 WL 4263957 (C.D. Cal. July 10, 2015) ............. 6, 8, 12

*Green Tree Financial Corp. – Alabama v. Randolph*,
   531 U.S. 79 (2000)..................................................................................... 6

*Howsam v. Dean Witter Reynolds, Inc.*,
   537 U.S. 79 (2002)..................................................................................... 8

*Independent Living Resource Center San Francisco v. Lyft, Inc.*,
   No. C 19-01438, 2020 WL 6802410 (N.D. Cal. Nov. 19, 2020).......................... 14

*Kairv v. Supershuttle Int'l*,
   No. 08-cv-02993, 2012 WL 4343220 (N.D. Cal. Sept. 20, 2012)........................ 12

*Khalatian v. Prime Time Shuttle, Inc.*,
   237 Cal. App. 4th 651 (2015) ...................................................................... 7

*Klein v. Delbert Servs. Corp.*,
   No. 15-CV-00432-MEJ, 2015 WL 1503427 (N.D. Cal. Apr. 1, 2015) .................. 11

*Knutson v. Sirius XM Radio Inc.*,
   771 F.3d 559 (9th Cir. 2014) ...................................................................... 6

*KPMG LLP v. Cocchi*,
   565 U.S. 18 (2011)..................................................................................... 6

*Lamkin v. Morinda Properties Weight Parcel, LLC*,
   440 Fed. Appx. 604 (10th Cir. 2011).............................................................. 5

*Levin v. Caviar, Inc.*,
   146 F. Supp. 3d 1146 (N.D. Cal. 2015) ........................................................ 10

TAWKIFY, INC.'S MOTION TO COMPEL ARBITRATION          CASE NO.: 3:20-cv-07000-WHA

*Loewen v. Lyft, Inc.*,
    129 F.Supp.3d 945 (N.D. Cal. 2015) ........................................................ 6, 13

*Long v. Provide Commerce, Inc.*,
    245 Cal. App. 4th 855 (2016) ........................................................... 11

*Manard v. Knology, Inc.*,
    2010 WL 2528320 (M.D. Ga. June 18, 2010) ........................................ 7

*Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*,
    89 Cal. App. 4th 1042 (2001) ........................................................... 10

*Metalclad Corp. v. Ventana Envtl. Organizational P'ship*,
    109 Cal. App. 4th 1705 (2003) ........................................................... 9

*Meyer v. Uber Techs., Inc.*,
    868 F.3d 66 (2d Cir. 2017) ........................................................... 10

*Morvant v. P.F. Chang's China Bistro, Inc.*,
    870 F. Supp. 2d 831 (N.D. Cal. 2012) ........................................ 13, 14

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) ........................................................... 8

*Norton v. Lyft, Inc.*,
    No. 19-cv-02025, 2019 WL 4744691 (N.D. Cal. Sept. 13, 2019) ........................................... 6

*Peterson v. Lyft, Inc.*,
    No. 16-CV-07343-LB, 2018 WL 6047085 (N.D. Cal. Nov. 19, 2018) ........................... 10, 12

*Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*,
    55 Cal.4th 223 (Cal. 2012) ........................................................... 6

*Rosenthal v. Great W. Fin. Sec. Corp.*,
    14 Cal. 4th 394 (1996) ........................................................... 9

*Scott v. Yoho*,
    248 Cal. App. 4th 392 (2016) ........................................................... 7

*Sparling v. Hoffman Const. Co., Inc.*,
    864 F.2d 635 (9th Cir. 1988) ........................................................... 14

*Stewart v. Preston Pipeline Inc.*,
    134 Cal. App. 4th 1565 (2005) ........................................................... 9

*Strotz v. Dean Witter Reynolds*,
    223 Cal.App.3d 208 (1990) ........................................................... 11

*Swift v. Zynga Game Network, Inc.*,
    805 F. Supp. 2d 904 (N.D. Cal. 2011) ........................................................................ 11

*Tompkins v. 23andMe, Inc.*,
    No. 5:13-CV-05682-LHK, 2014 WL 2903752 (N.D. Cal. June 25, 2014),
    aff'd, 840 F.3d 1016 (9th Cir. 2016) ............................................................... 11, 13

*United Steelworkers v. Warrior & Gulf Navigation Co.*,
    363 U.S. 574 (1960) ...................................................................................... 8, 11

*Volt Info. Scis. v. Bd. of Trustees of Leland Stanford Junior Univ.*,
    489 U.S. 468 (1989) ........................................................................................ 13

*Wagner v. Stratton Oakmont, Inc.*,
    83 F.3d 1046 (9th Cir. 1996) ............................................................................ 11

**Statutes**

9 U.S.C. § 1, *et seq.* ....................................................................................................... 2
Cal. Civ. Code § 1550 ............................................................................................... 9, 10
Cal. Civ. Code § 1556 ................................................................................................... 9
Cal. Civ. Code § 1565 .................................................................................................. 10
Cal. Civ. Code, § 1694, *et seq.* ..................................................................................... 1

**Rules**

Fed. R. Civ. Proc. Rule 12 ............................................................................................. 5

TAWKIFY, INC.'S MOTION TO COMPEL ARBITRATION    CASE NO.: 3:20-cv-07000-WHA

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff Jeremy Stanfield ("Plaintiff") sought out Tawkify, Inc. ("Tawkify") for matchmaking services.  In July of 2020, after having meaningfully used Tawkify's services for two dates that a Tawkify matchmaker arranged, Plaintiff allegedly asked to cancel his contract with Tawkify and demanded a full refund.  According to the First Amended Complaint ("FAC"), "[a]s of the date of the filing of the complaint in this matter," Tawkify had refunded Plaintiff $1,900.00, but not a full refund.  Notably, the FAC omits that well before the date of the filing of the operative complaint before this Court Plaintiff actually received a full refund.

Nevertheless, Plaintiff asserts purported claims on behalf of himself and a putative nationwide class of consumers who purchased Tawkify's services over the past four years.  The crux of Plaintiff's allegations is that Tawkify "does not provide consumers with the adequate right of cancellation or revocation" under the Dating Service Contract Act ("DSCA"), Cal. Civ. Code, § 1694, *et seq.*, specifically, that the client agreement, refund policy, and/or Terms of Use did not include a three-day cooling period to cancel, the identification of a designated operator's name and email address to contact for cancellations, and the "required language related to the buyer's death or disability."  As a threshold matter, the FAC is devoid of allegations showing how Plaintiff was directly or actually impacted by Tawkify's alleged failure to include such provisions in the version of its contracts with its clients that was operative at the time that Plaintiff engaged Tawkify's services—given the timing of his refund request was well over three days after he signed up, or even that these provisions applied to his individualized and subjective reasoning for cancellation.

Nevertheless, because Plaintiff squarely admits to entering into an agreement with Tawkify to use its services, and he in fact did use those services, Plaintiff must pursue his claims against Tawkify in arbitration.  Specifically, Plaintiff was ***repeatedly*** presented with and affirmatively agreed to Tawkify's Terms of Use, which provides that the exclusive means of resolving any dispute between the parties arising out of or relating to the agreement, Tawkify's services, or the Tawkify website shall be through binding arbitration.  The Terms of Use also contains a valid waiver of any right to pursue or participate in claims against Tawkify in any kind of class or representative action.

Tawkify's arbitration agreement is fully enforceable under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*  The arbitration agreement is valid, and the dispute at issue plainly falls within those covered under the agreement.  Further, Plaintiff's underlying agreement for matchmaking services evidences a transaction involving commerce, and courts have routinely found that online services such as those provided by Tawkify constitutes "commerce" under the FAA.  Should Plaintiff claim that the alleged violations of the DSCA may somehow render the parties' contract void and unenforceable, it is wholly separate and inapplicable to the enforceability of the arbitration agreement.  Indeed, the United States Supreme Court has unequivocally held that the arbitrator, rather than a court, decides in the first instance whether the contract that contains the parties' arbitration agreement is valid.  This Court should thus exercise its broad discretion to dismiss this litigation in light of the enforceable arbitration agreement.

Tawkify therefore respectfully requests that the Court issue an order compelling Plaintiff to arbitrate his claims individually.

## II.   RELEVANT FACTUAL BACKGROUND

Tawkify operates an online matchmaking service that requires all users to follow a sign-up process before they can access even the basic, free features on its website.  (Declaration of Kellie Ammerman ("Ammerman Decl.," ¶ 3.)  Plaintiff alleges that he made an "online inquiry" with Tawkify after he "came across an advertisement on Facebook" in June 2020.  (FAC, ¶ 13.)  To request a screening call and create a profile with Tawkify during this time period, prospective Tawkify clients are first presented with a screen that requires them to input their names and contact information.  Before they may continue, prospective clients are generally required to check a box next to the words "By continuing, I certify that I am over 18 and have read and agree[d] to [the] Terms of Use, Privacy Policy, [and] Refund Policy."  (Ammerman Decl., ¶ 4, Ex. A)  A representative image of the screen that Plaintiff was presented with when he first created his profile on June 15, 2020 is below:

1
2
3
4
5
6
7
8
9
10
11



(*Id.*)

The words "Terms of Use," "Privacy Policy," and "Refund Policy" are next to the checkbox in blue text and hyperlinked so that prospective clients, including Plaintiff can easily and readily review those terms and policies before affirming that they were willing to be bound by them. (Ammerman Decl. ¶ 5.)  Here, if Plaintiff had hypothetically tried to move forward to the next screen without first checking the box to indicate an unequivocal willingness to accept Tawkify's Terms of Use, he would have received a popup alert with a large bold exclamation point, stating "**!** Please check this box if you want to proceed."  (*Id.* ¶ 6.)  A representative image of the popup alert that would appear on Plaintiff's screen if he attempted to bypass the checkbox requirement is below:



(*Id.* ¶ 6, Ex. A.)

Plaintiff alleged that he "purchased a six-date package" from Tawkify on June 29, 2020. (FAC, ¶ 15.) Tawkify's records show that Plaintiff received a receipt from Tawkify through electronic mail that same day plainly stating that "The receipt confirms your purchase and

TAWKIFY, INC.'S MOTION TO COMPEL ARBITRATION        CASE NO.: 3:20-cv-07000-WHA

agreement with our <u>Terms of Use</u>, <u>Privacy Policy</u>, and <u>Refund Policy</u>." (Ammerman Decl. ¶ 9, Ex. D.)  The words "Terms of Use, Privacy Policy, and Refund Policy" were all in blue text and hyperlinked to allow Plaintiff immediate access for review.  (*Id.*)

After entering into a client agreement with Tawkify, Plaintiff affirmatively agreed to be bound by Tawkify's Terms of Use, including its arbitration provision and class action waiver, ***two*** more times on two separate occasions.  On July 7, 2020, before Plaintiff was paired with his first match, he was asked, and did affirmatively agree to Tawkify's Terms of Use.  (Ammerman Decl. ¶ 10.)   He was again asked to confirm his agreement to Tawkify's Terms of Use a second time on July 13, 2020.  (*Id.*)  On both occasions, Plaintiff was asked, upon logging onto his account, to first confirm his agreement with the terms, refund policy, and agreement before he can move forward to his account dashboard.   Each and every time, Plaintiff voluntarily clicked the button stating "Confirm and Proceed to my Dashboard," evincing his unequivocal and continued agreement to Tawkify's Terms of Use, including its arbitration provision and class action waiver.   A representative image of the screen Plaintiff saw on July 7 and July 13 upon logging into his Tawkify account is below:



(*Id.* ¶ 10, Ex. E.)

The relevant Terms of Use Plaintiff agreed to be bound by ***several*** times includes a clear arbitration agreement (the "Arbitration Agreement") and class action waiver under the bolded

section heading "**Governing Law**":

> This Terms of Use, your rights and obligations, and all actions contemplated by this Terms of Use shall be governed by the laws of the [State of] California.  As a condition of using Tawkify's services, each user agrees that *any and all disputes and causes of action arising out of or connected with Tawkify, shall be resolved through arbitration*, with such arbitration to be held in San Francisco, California.
>
> Additionally, except where prohibited by law, as a condition of using the Services, *you agree that any and all disputes and causes of action arising out of or connected to the Services shall be resolved individually, without resort to any form of class action*.

(*Id.* ¶ 7, Ex. B (emphasis added).)

Not only did Plaintiff consent to the Terms of Use and binding arbitration of his claims, he also agreed to Tawkify's Refund Policy and was ultimately issued a full refund as of August 26, 2020.  (Ammerman Decl. ¶ 11.)

## III.   LEGAL STANDARD

"The FAA provides that any arbitration agreement within its scope 'shall be valid, irrevocable, and enforceable,' and permits a party 'aggrieved by the alleged … refusal of another to arbitrate' to petition any federal district court for an order compelling arbitration in the manner provided for in the agreement."[1]  *Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126,

---

[1] In filing this Motion, Tawkify does not waive its right to separately bring, on a later date determined by the Court, substantive pleading challenges on other grounds, including but not limited to the FAC's failure to state a claim on which relief could be granted under Rule 12.  Tawkify respectfully submits that in the interest of efficiency and judicial economy, this matter would be best served by first having the instant Motion heard at the outset prior to motions that ask this Court to rule on the merits.  *See, e.g. Cape Flattery Ltd. v. Titan Maritime LLC*, No. 08-00482, 2012 WL 3113168, at *1 (D. Hawaii July 31, 2012) (ruling on plaintiff's motion to strike arbitration-related portions from the Answer filed after the Ninth Circuit affirmed its denial of defendant's motion to compel, filed "[i]n response to the Complaint"); *and see, e.g. Lamkin v. Morinda Properties Weight Parcel, LLC*, 440 Fed. Appx. 604, 607-08 (10th Cir. 2011) ("a defendant in a pending lawsuit may file a . . . motion to compel arbitration in lieu of an answer to the complaint . . . . requiring a party to file an answer denying material allegations in the complaint and asserting potential affirmative defenses— in short, formally and substantively *engaging in the merits of the litigation*—in order to enforce its

5

1130 (9th Cir. 2000) (quoting 9 U.S.C. Section 4).  The Supreme Court has explained that the FAA reflects an "emphatic federal policy in favor of arbitral dispute resolution." *KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011).  Upon a showing that a party has failed to comply with a valid arbitration agreement, the district court must then issue an order compelling arbitration.  *Id.*  A party moving to compel arbitration must show "(1) the existence of a valid, written agreement to arbitrate; and, if it exists, (2) that the agreement to arbitrate encompasses the dispute at issue." *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015) (citation omitted); *see also Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014).

Plaintiff has the burden of proof in opposing this motion to compel arbitration.  *See Graf v. Match.com, LLC,* No. CV 15-3911 PA (MRWX), 2015 WL 4263957, at *3 (C.D. Cal. July 10, 2015) (citing to *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal.4th 951, 972 (Cal. 1997) ("[A] party opposing the petition [to arbitrate] bears the burden of proving by a preponderance of the evidence any fact necessary to its defense"); *see also Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal.4th 223, 236, (Cal. 2012) ("[T]he party opposing arbitration bears the burden of proving any defense such as unconscionability.").  Moreover, this Court has broad discretion to dismiss the case upon a finding that arbitration should be compelled.  *Loewen v. Lyft, Inc.*, 129 F.Supp.3d 945 (N.D. Cal. 2015) ("Because the Court concludes that arbitration should be compelled, it has the discretion to stay the case under 9 U.S.C. § 3 or dismiss the litigation entirely"); *see also, Norton v. Lyft, Inc.*, No. 19-cv-02025, 2019 WL 4744691, at *1 (N.D. Cal. Sept. 13, 2019) (dismissing plaintiff's claims even after defendant requested a stay under 9 U.S.C. § 3); *see also, e.g.*, *Brunner v. Lyft, Inc.*, No. 19-cv-04808, 2019 WL 6001945, at *3 (N.D. Cal. Nov. 14, 2019) (dismissing action after compelling arbitration); *and see, e.g.*, *Green Tree Financial Corp. – Alabama v. Randolph*, 531 U.S. 79, 83 (2000) (affirming that a district court's granting of petitioner's motion to compel arbitration and dismissing claims with prejudice was a final decision).

/ / /

/ / /

right *not to litigate* is a non-sequitur") (emphasis in original) (internal citations omitted); *see also, e.g.*, *Green Tea Financial Corp.-Alabama v. Randolph*, 531 U.S. 79, 83 (2000).

1

2

## IV.   LEGAL ARGUMENT

### A.   The Arbitration Agreement Is Governed by the FAA.

3

4

5

6

7

8

9

Tawkify's Arbitration Agreement is governed by, and fully enforceable under, the FAA because the underlying contract squarely evidences a transaction affecting commerce as defined under the FAA. *See Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273-74, 281 (1995) (the FAA applies to contracts evidencing a transaction "affecting commerce"). A party need not "show[] any specific effect upon interstate commerce," as long as "in the aggregate the economic activity in question would represent a general practice…subject to federal control." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56-57 (2003).

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Plaintiff alleges that all of his interactions with Tawkify were done either through electronic mail or by phone. Indeed, Plaintiff specifically alleges to having "made an online inquiry," communicating with a Tawkify matchmaker to purchase services and to describe his preferences in women by phone (FAC ¶ 13); having electronically signed a Client Agreement (*Id.* ¶ 15); and continuing to communicate with Tawkify, including to cancel and demand refunds, through electronic mail. (*Id.* ¶ 21.) Based on these allegations, Tawkify's agreement with Plaintiff is a contract affecting commerce, and the FAA therefore plainly applies. Courts regularly find that the FAA applies where, as here, a contract involves transactions and communications over email and on the Internet. *See Khalatian v. Prime Time Shuttle, Inc.*, 237 Cal. App. 4th 651, 658 (2015) (FAA governed contract of shuttle driver who drove only in California where defendant's customers made reservations and paid for rides over Internet); *and see Manard v. Knology, Inc.*, 2010 WL 2528320, at *3 (M.D. Ga. June 18, 2010) (FAA governed contract for Internet services); *and see Burks v. Autonomy, Inc.*, 2012 WL 13005954, at *3 (S.D. Fla. May 15, 2012) (FAA governed contract with "software company dealing in Internet content management solutions with clients across the United States"); *see also Scott v. Yoho*, 248 Cal. App. 4th 392, 402 (2016) (FAA governed contract when doctor engaged in Internet advertising and communication with out-of-state patients by telephone, mail, and email).

27

### B.   The Arbitration Agreement Is Valid and Covers Plaintiff's Claims.

28

Courts generally look at two "gateway" issues when determining if arbitration must be

compelled under the FAA: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute.  *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84 (2002).  Further, any doubt as to the proper interpretation of the agreement on any issue related to arbitrability "should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense of arbitrability."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983); *see also Ericksen, Arbuthnot, McCarthy, Kearney & Walsh Inc. v. 100 Oak Street*, 35 Cal. 3d 312, 320 (1983).

### 1.   *Validity*

The Court's focus must be on the validity of the Arbitration Agreement, and not the underlying contract as a whole.  To the extent that Plaintiff seeks to argue that the arbitration agreement is invalid because Tawkify's alleged DSCA violations renders the parties' underlying services contract void and unenforceable, this argument should fail.  (*See* FAC ¶ 34.)   The validity of the contract containing an arbitration agreement is irrelevant to this Court's determination of whether or not to compel arbitration.  *See Graf v. Match.com, LLC*, No. CV15-3911, 2015 WL 4263957, *4 (July 10, 2015) (rejecting plaintiff's reliance on *Duffens v. Valenti*, 161 Cal. App. 4th 434 (2008) and finding that "Plaintiff's argument that the contract is void because of Defendant's alleged failure to provide a notice of cancellation rights does not challenge the validity of the arbitration provision").  The Supreme Court has unequivocally held that the arbitrator, and not the court, decides in the first instance whether the contract that contains the parties' arbitration agreement is valid.  *See Buckeye Check Cashing v. Cardenga*, 546 U.S. 440, 445-46 (2006) ("unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instances.").

Turning to the validity of the Arbitration Agreement itself, "arbitration is a matter of contract."  *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960).  Ordinary state law principles governing the formation of contracts are therefore used to determine whether the parties agreed to arbitrate.  *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Metalclad Corp. v. Ventana Envtl. Organizational P'ship*, 109 Cal. App. 4th 1705, 1712

(2003).   The moving party's burden is light in this regard.  Tawkify need only show, by a preponderance of the evidence, that an agreement to arbitrate exists.  *See Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 413 (1996).  Tawkify has squarely met this burden.

Under California law, a valid contract exists when (1) the parties are capable of contracting, and there is (2) a lawful object, (3) mutual consent, and (4) sufficient cause or consideration. Cal. Civ. Code § 1550; *Div. of Labor Law Enforc. v. Transpacific Transp.*, 69 Cal. App. 3d 268, 275 (1977).  The Arbitration Agreement in the Terms of Use meets all of these requirements.

First, there is no dispute that the parties are capable of contracting.  Tawkify, a company, regularly offers and enters into agreements to provide matchmaking services to potential clients. (Ammerman Decl. ¶ 3).  Plaintiff admits he is an "individual over the age of 18" (FAC ¶ 6), and nowhere in the FAC does Plaintiff allege that he does not, or did not at that time, have the capacity to enter into a contract.  *See* Cal. Civ. Code § 1556 ("All persons are capable of contracting, except minors, persons of unsound mind, and persons deprived of civil rights.").  Indeed, nowhere in the FAC does Plaintiff dispute that he entered into an agreement with Tawkify for its matchmaking services.  (*See generally*, FAC.)  Plaintiff admits that he sought out Tawkify for matchmaking services, intended to, and did enter an agreement; he even attached as an exhibit to the FAC of what he claims to be the Client Agreement he voluntarily signed for "a six-date package with Tawkify." (FAC ¶ 15.)

Second, the Arbitration Agreement has a lawful purpose—that is, the prompt and efficient resolution of disputes in arbitration. *See Stewart v. Preston Pipeline Inc.*, 134 Cal. App. 4th 1565, 1586 (2005) (finding arbitration provision had lawful purpose of resolving litigation); *see also Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (by enacting the FAA, "Congress directed courts to… treat arbitration agreements as 'valid, irrevocable, and enforceable'").  Further, to the extent Plaintiff takes the position that his overall agreement(s) with Tawkify did not have a lawful purpose, a contention Tawkify disputes, that is wholly irrelevant for purposes of this Court's determination of whether to compel arbitration.  *See Buckeye*, 546 U.S. 445-46 ("[A]s a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract. [And], unless the challenge is to the arbitration clause itself, the issue of the contract's validity is

considered by the arbitrator in the first instance."); *see Graf v. Match.com, LLC*, No. 15-3911, 2015 WL 4263957, at *4 ("Plaintiff's efforts to void the contract between the parties therefore do not prevent enforcement of the arbitration provision" [citing to *Chavarria v. Ralphs Grocery Co.* 733 F.3d 916, 921 (9th Cir. 2013) ("State rules disproportionately impacting arbitration, though generally applicable to contracts of all types, are nonetheless preempted by the FAA when the rule stands as an obstacle to the accomplishment of Congress's objectives in enacting the FAA") (internal quotation marks and citations omitted)]).

Third, as discussed above, there is unequivocal mutual assent. Plaintiff agreed to the Terms of Use and the Arbitration Agreement contained therein on ***three*** separate occasions. *See Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*, 89 Cal. App. 4th 1042, 1049-50 (2001) ("Every contract requires mutual assent or consent (Cal. Civ. Code §§ 1550, 1565), and ordinarily one who signs an instrument which on its face is a contract is deemed to assent to all its terms."); *see also Peterson v. Lyft, Inc.*, No. 16-CV-07343-LB, 2018 WL 6047085, at *2 (N.D. Cal. Nov. 19, 2018) (finding that the arbitration agreement is enforceable where a plaintiff's "clicking of the 'I accept' button rendered Lyft's Terms of Service a binding contract"); *see also Camilo v. Lyft, Inc.*, 384 F.Supp.3d 435 (S.D.N.Y. 2019) (finding that "there was a manifestation of an agreement on behalf of [plaintiff] where he clicked "I ACCEPT" in order to continue using" the defendant's platform because he "knew he could not proceed without accepting . . .[and] had the opportunity, though he chose not to use it, to read . . . ."); *and see Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75-80 (2d Cir. 2017) (vacating order denying motions to compel arbitration after holding that availability of a contract "only by hyperlink does not preclude a determination of reasonable notice" and that the plaintiff "unambiguously manifested his assent to [the contract] as a matter of California law").

Courts have routinely held that consent similar to what Plaintiff gave to Tawkify—having to check a box and affirmatively click a button confirming his agreement to Tawkify's hyperlinked Terms of Use before proceeding—satisfies this prong. *See , e.g., Levin v. Caviar, Inc.*, 146 F. Supp. 3d 1146, 1157 (N.D. Cal. 2015) (compelling arbitration and finding contract was formed when plaintiff clicked on a button to indicate assent to an agreement whose terms were accessible by

hyperlink); *see also Tompkins v. 23andMe, Inc.*, No. 5:13-CV-05682-LHK, 2014 WL 2903752, at *8 (N.D. Cal. June 25, 2014), aff'd, 840 F.3d 1016 (9th Cir. 2016) (holding that contract had been formed when plaintiff "clicked a box or button that appeared near a hyperlink to the [contract] to indicate acceptance of the [contract]"); *and see Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 910-12 (N.D. Cal. 2011) (compelling arbitration and finding video game user bound by Zynga's terms of service because she clicked the "accept" button immediately above a hyperlink which contained its terms); *see also Long v. Provide Commerce, Inc.*, 245 Cal. App. 4th 855, 862-63 (2016) (distinguishing a "browsewrap" agreement seeking to bind plaintiff to Terms of Use agreement merely by visiting the website, from an enforceable "clickwrap" agreement which requires an affirmative act of consent).

Fourth, the Arbitration Agreement is supported by valid consideration: the parties' mutual promises to arbitrate disputes.  *See Klein v. Delbert Servs. Corp.*, No. 15-CV-00432-MEJ, 2015 WL 1503427, at *3 (N.D. Cal. Apr. 1, 2015) (citing *Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1108 (9th Cir. 2002) [an employer's promise to be bound by the arbitration process itself serves as adequate consideration]) (citing *Strotz v. Dean Witter Reynolds*, 223 Cal.App.3d 208, 216 (1990) ("Where an agreement to arbitrate exists, the parties' mutual promises to forego a judicial determination and to arbitrate their disputes provide consideration for each other.")).

Accordingly, the Arbitration Agreement at issue is valid.

### 2.   *Claims Covered*

"[A]bsent some ambiguity in the agreement… it is the language of the contract that defines the scope of disputes subject to arbitration."  *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002).  Courts must "interpret the contract by applying general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration."  *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996); *see also United Steelworkers*, 363 U.S. at 582-83 (courts must conclude that disputes are covered "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage").  This requirement is similarly satisfied.

1    Here, the Arbitration Agreement encompasses all disputes and causes of actions which arise

2    out of or are connected to the relationship between Plaintiff and Tawkify: "As a condition of using

3    Tawkify's services, each user agrees that any and all disputes and causes of action arising out of or

4    connected with Tawkify, shall be resolved through arbitration, with such arbitration to be held in

5    San Francisco, California." (Ammerman Decl., ¶ 7, Ex. B.)  As each of Plaintiff's claims arise out

6    of his contractual relationship with Tawkify as its client for services, each of Plaintiff's claims in

7    the FAC is plainly covered by the Arbitration Agreement.

8        **C.    The Arbitration Agreement Is Not Unconscionable.**

9    As the party opposing arbitration, Plaintiff has the burden of proving that the arbitration

10   provision is ***both*** procedurally and substantively unconscionable.  *Kairv v. Supershuttle Int'l*, No.

11   08-cv-02993, 2012 WL 4343220, at *7 (N.D. Cal. Sept. 20, 2012) (*citing Ajamian v. CantorCO2e,*

12   *L.P.*, 203 Cal. App. 4th 771, 795 (2012)).  To the extent that Plaintiff contends that a contract of

13   adhesion is procedurally unconscionable, this Court can readily reject it.  Courts have routinely

14   found that "[a]t best, this presents a minimal level of procedural unconscionability" and that the

15   arbitration agreement will remain enforceable unless other evidence is presented.  *Peterson v. Lyft,*

16   *Inc.* No. 16-cv-07343, 2018 WL 6047085 (N.D. Cal. Nov. 19, 2018).  A similarly worded arbitration

17   agreement involving the dating website Match.com was found to be "at most minimally

18   procedurally unconscionable" and ***not*** substantively unconscionable in *Graf v. Match.com, LLC*,

19   No. CV 15-3911 PA (MRWX), 2015 WL 4263957, at *5 (C.D. Cal. July 10, 2015).  The court found

20   minimal procedural unconscionability based on Match.com's arbitration provision being "presented

21   as its own section of the Terms of Use" with some bold type to draw the reader's attention and

22   because "the interests of Plaintiff and the putative class are far less significant than those that may

23   attach to an employment contract or other important financial relationship."  *Id.*  Further, the *Graf*

24   court found there was no substantive unconscionability despite the class action waiver.  *Id.*

25   Here, the Arbitration Agreement is similarly under its own, separate section—that is, it is

26   within the "Governing Law" section, the latter of which is in bold type.  This alerts potential clients

27   of the law and forum that will govern their disputes.  To the extent that Plaintiff might seek to

28   distinguish *Graf* because the Arbitration Agreement here falls under the bolded heading "Governing

Law" rather than "Arbitration Agreement," that is a distinction without a difference.  A similar argument was previously rejected in *Morvant v. P.F. Chang's China Bistro, Inc.*, 870 F. Supp. 2d 831, 838 (N.D. Cal. 2012).

In *Morvant*, the plaintiffs argued that including an arbitration agreement under a heading "titled 'Dispute Resolution Policy' constitutes as unfair surprise." *Morvant*, 870 F. Supp 2d at 838. They claimed that the "Dispute Resolution Policy" was "confusing" and "not set out in bold or capital typeface.'" *Id.*  The court found that neither the arbitration agreement nor the class action waiver were buried or confusing.  *Id.*

Here, as in *Morvant*, the arbitration agreement (and class action waiver—further discussed in Sec. IV D) are not hidden.  In fact, the arbitration language is in the **_second_** sentence of the **_first paragraph_** in a two-paragraph "Governing Law" section.  Further, any contention that the Arbitration Agreement might be substantively unconscionable merely because it was one-sided should fail.  *See, e.g., Loewen v. Lyft, Inc.*, 129 F.Supp.3d 945 (N.D. Cal. 2015) ("A party cannot avoid a contractual obligation merely by complaining that the deal, in retrospect, was unfair or a bad bargain.  Not all one-sided contract provisions are unconscionable; hence the various intensifiers in our formulations: 'overly harsh,' 'unduly oppressive,' 'unreasonably favorable'"). Moreover, the Ninth Circuit has held that a defendant's ability to unilaterally modify the contract does not "per se" make an arbitration provision unconscionable, because "California courts have held that the implied covenant of good faith and fair dealing prevents a party from exercising its rights under a unilateral modification clause in a way that would make it unconscionable." *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1033 (9th Cir. 2016).

### D.     The Class Action Waiver Is Valid and Enforceable.

The Supreme Court has held that arbitration agreements must be enforced "according to their terms," *Volt Info. Scis. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989), and that "**include[s] terms providing for individualized proceedings**." *Epic Sys.*, 138 S. Ct. at 1619 (emphasis added).  Courts routinely enforce class action waivers where, as here, they are not "buried" in the contract or otherwise difficult for the contracting parties to discover.  *See, e.g., Morvant,* 870 F. Supp 2d at 838 ("The waiver states that the employee may not bring 'a class

or collective action,' or 'participate in a class, representative or collective action.' …[T]he class waiver is not 'buried' in a long paragraph, but rather, the class waiver is set out in the last two sentences of a six sentence paragraph.").

The class action waiver in Tawkify's "Governing Law" and arbitration section of the Terms of Use can hardly be considered buried.  It is the *__first__* sentence of the second paragraph in a two paragraph section of the agreement.  (Ammerman Decl. ¶ 7, Ex. B.)  As such, the prominent display of the words "you agree that any and all disputes and causes of action arising out of or connected to the Services shall be resolved individually, without resort to any form of class action" is clear and conspicuous, and should be enforced.  Indeed, this Court recently found that a defendant presented sufficient evidence of a "valid and enforceable binding arbitration provision *and* a class action waiver" in which the arbitration provision and class action waiver were placed on page ten of twenty-two of defendant's Terms of Service, and under separate, bolded section headings in its Terms of Service.  *See Independent Living Resource Center San Francisco v. Lyft, Inc.*, No. C 19-01438, 2020 WL 6802410, at *1 (N.D. Cal. Nov. 19, 2020) ("The emergence of the waiver and arbitration requirement means that any class . . . would be subject to binding arbitration and would have to be removed from class actions") (emphasis in original).

As in *Morvant*, there is no element of surprise. There, the court found that the class action waiver was sufficiently prominent when it was near the bottom of six sentences in a paragraph. *Morvant,* 870 F. Supp 2d at 838.  Whereas here, it *leads* a paragraph.  Moreover, Plaintiff had *__three__* separate occasions to review the Terms of Use and manifested his assent up to three separate times to be bound by it, which included the class action waiver.  (*See* Sec. IV C.)

Because Plaintiff should be compelled to arbitrate his claims individually, this matter should be dismissed.  *See Bigge Crane & Rigging Co. v. Agility Project Logistics, Inc.*, No. 20-CV-01082-DMR, 2020 WL 6710087, at *3 (N.D. Cal. Nov. 16, 2020) (citing *Sparling v. Hoffman Const. Co., Inc.*, 864 F.2d 635, 638 (9th Cir. 1988) ("The Ninth Circuit has held that courts have discretion under Section 3 to dismiss claims that are subject to an arbitration agreement.")).

**V.    CONCLUSION**

For each of the foregoing reasons, Tawkify respectfully requests that the Court dismiss this

1   action and order that Plaintiff arbitrate his claims individually.

2

3   Dated: December 8, 2020                NELSON MULLINS RILEY & SCARBOROUGH LLP

4                                          By:     /s/ Jahmy S. Graham

5                                                  Jahmy S. Graham
                                                   Priscilla Szeto
6                                                  Crispin L. Collins

7                                                  Attorneys for Defendant
                                                   TAWKIFY, INC.
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

I hereby certify that on , I electronically filed the forgoing with the Clerk of court using the CM/ECF system and I served a copy of the forgoing pleading on all counsel for all parties via the CM/ECF system and/or mailing same by United States Mail, properly addressed, and first class postage preaid, to all counsel of record in this matter.

Executed December 8, 2020 at Torrance, California.

Jahmy S. Graham
    Print Name

By: _/s/ Jahmy S. Graham_
                    Signature