1

2                          UNITED STATES DISTRICT COURT

3

4                          NORTHERN DISTRICT OF CALIFORNIA

5

6    JEREMY STANFIELD,

7              Plaintiff,                       No.  C-20-07000-WHA

8         v.

9    TAWKIFY, INC.,                             **ORDER DENYING MOTION TO**
                                                **COMPEL ARBITRATION**
10             Defendant.

11

12                                  **INTRODUCTION**

13        Defendant matchmaking service moves to compel arbitration against the named plaintiff

14   in a putative class action brought under California's Dating Services Contract Act.

15                                   **STATEMENT**

16        Jeremy Stanfield paid $3700 to Tawkify, Inc. to arrange six dates, two of which occurred

17   but not to his satisfaction.  He sought to cancel the contract and demanded a full refund.  After

18   obtaining only a partial refund, Stanfield filed the present suit, anchoring his claims in

19   California's Dating Services Contract Act.  Then he received a full refund.

20        Tawkify now seeks to compel arbitration of the matter.  In signing up for the dating

21   service, Stanfield clicked on a box that said he had read Tawkify's terms of use (TOS).  The

22   TOS is ten pages long with substantive terms covering nine pages.  In a section on the last page

23   entitled "Governing Law," the second sentence provided:  "As a condition of using Tawkify's

24   services, each user agrees that any and all disputes and causes of action arising out of or

25   connected with Tawkify, shall be resolved through arbitration, with such arbitration to be held

26   in San Francisco, California."  The TOS provided no further details about arbitration, such as

27   who the arbitrator would be, who would pay, and so on.

28

United States District Court
Northern District of California

1    Stanfield replies that the provision is unconscionable and should not be enforced.  This

2    order agrees.

3                                              **ANALYSIS**

4    Both sides advance many arguments and counterarguments, but the way forward is plain

5    enough.  Tawkify contends that this motion is controlled by our court of appeals decision in

6    *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016 (9th Cir. 2016).  Taking Tawkify at its word, the

7    instant order considers both District Judge Lucy Koh and Circuit Judge Sandra Ikuta's panel

8    analysis on unconscionability.  After comparing the fact pattern in *23andMe* to the fact pattern

9    here, the instant order holds that, unlike *23andMe*, the agreement here is in fact

10    unconscionable, both procedurally and substantively, as follows.

11    *Tompkins v. 23andMe* considered the unconscionability of an arbitration agreement

12    imposed on customers who paid for a genetic testing service.  *Tompkins v. 23andMe, Inc*., No.

13    5:13-CV-05682-LHK, 2014 WL 2903752 (N.D. Cal. June 25, 2014), aff'd, 840 F.3d 1016 (9th

14    Cir. 2016).  There, 23andMe made the TOS viewable to users at all relevant times via

15    hyperlink at the very bottom of 23andMe's website homepage but did not require users to view

16    the TOS before buying a genetic testing kit.  After a purchase, customers had to create an

17    account and register their kit to submit saliva samples for testing.  "The account creation page

18    require[d] customers to check a box next to the line, 'Yes, I have read and agree to the Terms

19    of Service and Privacy Statement.'  The TOS and Privacy Statement appear[ed] in blue font

20    and [were] hyperlinks to the full terms . . . ."  *Id.* at 3.  To register a kit, a customer would also

21    have to view a page that stated "To continue, accept our terms of service" prominently

22    displayed at the top of the page, then "click a large blue icon that [read] 'I ACCEPT THE

23    TERMS OF SERVICE' before finishing the registration process and receiving their DNA

24    information."  *Ibid*.   23andMe's TOS stated:

25    > **Applicable law and arbitration.**  Except for any disputes relating
         to intellectual property rights, obligations, or any infringement
26    > claims, any disputes with 23andMe arising out of or relating to the
         Agreement ("Disputes") shall be governed by California law
27    > regardless of your country of origin or where you access 23andMe,
         and notwithstanding of any conflicts of law principles and the
28    > United Nations Convention for the International Sale of Goods.

United States District Court
Northern District of California

United States District Court
Northern District of California

> Any Disputes shall be resolved by final and binding arbitration
> under the rules and auspices of the American Arbitration
> Association, to be held in San Francisco, California, in English,
> with a written decision stating legal reasoning issued by the
> arbitrator(s) at either party's request, and with arbitration costs and
> reasonable documented attorneys' costs of both parties to be borne
> by the party that ultimately loses.  Either party may obtain
> injunctive relief (preliminary or permanent) and orders to compel
> arbitration or enforce arbitral awards in any court of competent
> jurisdiction.

*Id. at 2.*

At the district court level, Judge Koh had differentiated clickwrap agreements from

browsewrap agreements, observing that "courts have tended to enforce the former but not the

latter":

> A clickwrap agreement presents the user with a message on his or
> her computer screen, requiring that the user manifest his or her
> assent to the terms of the license agreement by clicking on an icon.
> By contrast, as this Court recently explained:

> Browsewrap agreements are those that purport to bind the users of
> websites to which the agreements are hyperlinked.  Generally, the
> text of the agreement is found on a separate webpage hyperlinked
> to the website the user is accessing.  The browsewrap agreements
> are generally entitled "Terms of Use" or "Terms of Service."  The
> defining feature of browsewrap agreements is that the user can
> continue to use the website or its services without visiting the page
> hosting the browsewrap agreement or even knowing that such a
> webpage exists.

*2014 WL 2903752* at 5–7 (quotations and citation omitted).  Judge Koh held that the arbitration

agreement mixed elements of clickwrap and browsewrap as it allowed users to browse

23andMe's website and make a purchase without displaying the arbitration agreement but

prompted users to check a box to assent to having viewed the hyperlinked TOS at the account

creation and registration phases.  She found the TOS ineffective to bind website visitors or

customers who only purchased a DNA kit without creating an account or registering their kit, but

the TOS constituted a permissible clickwrap agreement after account creation and registration

because customers "receive[d] an opportunity to review the terms and conditions and must

affirmatively indicate assent."  *Id*. at 7.  "The fact that the TOS [was] hyperlinked and not

3

presented on the same screen does not mean that customers lacked adequate notice." *Id*. at 8.

At the district court level, the plaintiff also raised a question of mutuality in the arbitration agreement.  In support of their unconscionability argument, the plaintiffs contended that the clause "any disputes with 23andMe" included only claims *against* 23andMe, so that 23andMe's affirmative claims would not be subject to arbitration.  Judge Koh rejected that argument, holding that the language of the "arbitration provision plainly applie[d] equally to both parties, and 23andMe does not take the position that this clause is a one-way street." *Id*. at 17, citing *Bigler v. Harker Sch.*, 213 Cal. App. 4th 727, 737–38 (2013) (rejecting argument that 'any dispute involving the School' was a nonmutual restriction).

Still, Judge Koh found 23andMe's arbitration provision to be procedurally unconscionable because the contract was adhesive, surprising, and oppressive.  She explained that the provision's adhesive quality stemmed from it being "a standardized clause drafted by 23andMe (who has superior bargaining strength relative to consumers) and presented as a take-it-or-leave-it agreement, giving consumers no opportunity to negotiate any terms."  2014 WL 2903752 at 15.  Customers "received minimal notice of the arbitration provision, and only after handing over their money." *Id*. at 16.  In her analysis, Judge Koh focused on the concealment and opacity of 23andMe's TOS in finding procedural unconscionability:  "even if customers locate[d] and click[ed] a hyperlink to the TOS, they must hunt for the arbitration provision because the terms appear[ed] at the very end of the TOS as a subparagraph to the final section titled 'Miscellaneous.'  A customer who noticed the provision's reference to the 'rules and auspices of the American Arbitration Association' must still determine the scope of the provision by searching for those rules . . . ." *Id*. at 14.  She found that the failure to call out the AAA rules (though it did call out AAA as the arbitrator) contributed to procedural unconscionability but acknowledged that California courts were divided on the issue. *Id*. at 15.

On appeal, the parties did not dispute District Judge Koh's finding of procedural

United States District Court
Northern District of California

1    unconscionability, so our court of appeals did not analyze it, focusing instead on substantive

2    unconscionability based on the plaintiff's challenge to "the provision's prevailing party clause,

3    the forum selection clause, and the clause excluding intellectual property claims from arbitration

4    . . . along with the one-year statute of limitations and 23andMe's right to modify the Terms of

5    Service."  Id. at 15.

6          Turning to the instant case, a provision on the last page of Tawkify's agreement provided

7    (Def. Exh. B at 9) (bold in original, italics added):

8

9          **Governing Law**
           This Terms of Use, your rights and obligations, and all actions
10         contemplated by this Terms of Use shall be governed by the laws
           of the California.  *As a condition of using Tawkify's services, each*
11         *user agrees that any and all disputes and causes of action arising*
           *out of or connected with Tawkify, shall be resolved through*
12         *arbitration, with such arbitration to be held in San Francisco,*
           *California*.  Additionally, except where prohibited by law, as a
13         condition of using the Services, you agree that any and all disputes
           and causes of action arising out of or connected to the Services
14         shall be resolved individually, without resort to any form of class
           action.  You also agree that regardless of any statute or law to the
15         contrary, any claim or cause of action arising from or related to the
           use of the Services must be filed within one (1) year after such
16         claim or cause of action arose or be forever barred.  The failure of
           either party to exercise in any respect any right provided for herein
17         shall not be deemed a waiver of any further rights hereunder.

18         With respect to procedural unconscionability, Tawkify's arbitration suffers from the same

19   problematic features as in *23andMe*:  it was take-it-or-leave-it;  users could not negotiate or opt

20   out; the provision was hidden on the last page under "Governing Law;" and there were no links

21   labeled "Arbitration."

22         More specifically, while the TOS was hyperlinked next to a checkbox at sign up and sign

23   in, nothing drew users' attention to Tawkify's arbitration requirement before (or after) they paid

24   for the service.  Users who signed up for Tawkify would also confusingly be provided a "Client

25   Agreement" via email which included information and rules related to using Tawkify but said

26   
27   nothing about arbitration or even the separate TOS (Opp. Exh. E at 5).  If users ever found the

28   arbitration provision online, they would have had to dig for it.  The arbitration provision was a

United States District Court
Northern District of California

needle in a haystack, with the word arbitration appearing only twice in the ten-page document

and referenced in a single sentence only, never bolded.  Not only did the section title make no

reference to arbitration — it simply called itself "Governing Law."  The section lay on the very

last of nine information-overloaded pages.  The TOS contained no other mention of arbitration.

This order holds that plaintiff has established that the arbitration requirement was highly

procedurally unconscionable.

Turning to substantive unconscionability, our court of appeals in *23andMe* explained:

> Under California law, [a]n evaluation of unconscionability is
> highly dependent on context.  California courts give the parties a
> reasonable opportunity to present evidence as to [the provision's]
> commercial setting, purpose, and effect, Cal. Civil Code § 1670.5,
> and then examine the context in which the contract was formed
> and the respective circumstances of the parties as they existed at
> the formation of the agreement.

*Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1023 (9th Cir. 2016) (citations and quotations

omitted).

Unlike the provision in *23andMe* that specified AAA arbitration, the provision here did

not specify any arbitrator, much less any rules.  This oppressed users by keeping them guessing

about how an arbitrator or arbitrators would be chosen or what rules would apply.  This created a

major problem by leaving huge amount to future guesswork, negotiation or litigation, all simply

to determine the basic arbitration framework in the first place.  This uncertainty loomed over any

grievance raised by the user as a heavy unknown, an unknown that would cost money to resolve.

In all likelihood, the user would have to sue to ask a judge to figure out who the arbitrator(s)

should be, what rules would apply, what discovery would be allowed, and who would pay for the

arbitrator, all of this before a single step in any arbitration.  This heavy burden of uncertainty and

expense effectively eviscerated any remedy to the ordinary consumer user.

The second problem is lack of mutuality.  "Lack of mutuality is relevant to assessing

substantive unconscionability."  *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 1001 (9th Cir. 2010).

6

United States District Court
Northern District of California

1    Tawkify's arbitration requirement was a one-way street — only the user promised to arbitrate.

2    Tawkify made no such promise (Def. Exh. B at 9) (emphasis added):

3            As a condition of using Tawkify's services, each user agrees that
             any and all disputes and causes of action arising out of or
4            connected with Tawkify, shall be resolved through arbitration, with
             such arbitration to be held in San Francisco, California.

5    Tawkify replies that the agreement must now be interpreted to require Tawkify to

6
     arbitrate all its disputes as well.  It would have been easy to say so in the TOS or to use the
7
     same wording as in *23andMe* but Tawkify didn't.  It kept its options open and only now, when
8
     it's convenient, claims it promised to arbitrate all such disputes.
9
             Other provisions of the TOS show that Tawkify knew how to make a promise (Def. Exh.
10
     B at 1):
11
             We hold your privacy sacred.  Pursuant to the Privacy Policy, we
12           will not disclose your photos or identifying information without
13           your permission to prospective matches, nor theirs to you.

14   In other words, Tawkify wanted to promise, it knew how to write the words.  Elsewhere the

15   TOS stated "Tawkify reserves the right, in our sole discretion, to change these Terms of Use at

16   any time," giving Tawkify, but not the user, the power to modify the terms (Def. Exh. B at 1).

17
             Under other terms of the TOS concerning "[i]llegal and or unauthorized use," Tawkify
18
     could take "appropriate legal action . . . including without limitation, civil, criminal, and
19
     injunctive compensation" (Def. Exh. B at 2).  This provision clearly contemplated a lawsuit in
20
     court, but only by Tawkify, not  by the user.
21
             By contrast, the mutuality of the arbitration provision in *23andMe* arose from
22
     distinguishable language stating that "any [d]isputes shall be resolved by final and binding
23
     arbitration . . . ."  2014 WL 2903752 at 2.  Tawkify's agreement used similar "any and all"
24
     language but, importantly, had the additional limitation that "the user agrees" which framed the
25
     arbitration obligation exclusively in terms of the *user's* obligation.
26

27

28

United States District Court
Northern District of California

1   "Where an arbitration agreement is concerned, the agreement is unconscionable unless

2   the arbitration remedy contains a modicum of bilaterality." *Ting v. AT&T, 319 F.3d 1126,*

3   *1149* (9th Cir. 2003) (citation omitted).  Here, the TOS refused users even a crumb of

4   bilaterality because users had to subject their claims to arbitration, while Tawkify could go to

5   court.

6       Our court of appeals found 23andMe's arbitration agreement not to be substantively

7   unconscionable despite the provision excluding "any disputes relating to intellectual property

8   rights, obligations, or any infringement claims" from mandatory arbitration.  But this too is

9   distinguishable from our case.  Despite finding that plaintiff failed to prove substantive

10  unconscionability, our court of appeals acknowledged the argument that 23andMe's arbitration

11  provision problematically "reserved for itself the advantages of a judicial forum while forcing

12  customers to use the arbitral forum," and stated that "such a theory finds some support in

13  California law."  840 F.3d 1016 at 1030.  Citing to *Armendariz v. Found. Health Psychcare*

14  *Servs., Inc.*, our court of appeals pointed out that there "an arbitration provision in an

15  employment agreement was unconscionably unilateral (and thus unenforceable) because,

16  among other things, it required the employee to arbitrate all wrongful termination claims

17  against the employer but gave the employer a choice of forums for its claims."  *Id.* at 1030,

18  citing 24 Cal. 4th 83 (2000).

19

20      The *23andMe* decision went on to clarify that the California Supreme Court had

21  reformed the interpretation of *Armendariz* in two ways.  It noted California law had since

22  "backed away from . . . assumptions regarding the inferiority of the arbitral forum" finding "no

23  inherent disadvantage" to using this version of dispute resolution.  840 F.3d 1016 at 1030

24  (citations omitted).  It also pointed out that the California Supreme Court had since clarified

25  that "a one-sided contract is not necessarily unconscionable." *Id*. at 1031.  Applying these

26  considerations to the consumer arbitration clause in *23andMe*, our court of appeals found that

27

28

8

the arbitration contract's exclusion of intellectual property disputes was not unconscionable because "to the extent 23andMe has valuable intellectual property rights in its website and database, it is entitled to an extra margin of safety based on legitimate business needs." *Ibid*.

This order distinguishes its finding of substantive unconscionability from *23andMe* for three reasons. *First*, Tawkify placed no reasonable parameters on its exemption from a mutual obligation to arbitrate, while in *23andMe* the arbitration agreement limited the scope of the exemption to only intellectual property disputes. For all other disputes, 23andMe's arbitration agreement established a mutual obligation between 23andMe and its customers, as explained by Judge Koh's analysis of the agreement. 2014 WL 2903752.

*Second*, unlike the clear language in 23andMe's arbitration agreement that alerted consumers to the exclusion of intellectual property disputes from arbitration, Tawkify's arbitration provision did nothing to warn users of Tawkify's exemption from the duty to arbitrate (nor of any other specifics of the arbitration process for that matter). To have any hope of discovering this lack of mutuality, Tawkify users would have to piece together the arbitration agreement's silence with other provisions of the TOS.

*Third*, Tawkify has presented no reasons why its one-sided arbitration agreement satisfied any legitimate business needs. Indeed, this Court can find none. The arbitration agreement at issue here left more than a mere margin of safety for Tawkify.

For the foregoing reasons, defendant's motion to compel arbitration is **DENIED**.

**IT IS SO ORDERED.**

Dated: February 3, 2021

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

9