**NELSON MULLINS RILEY & SCARBOROUGH LLP**
Jahmy S. Graham (SBN 300880)
jahmy.graham@nelsonmullins.com
Priscilla Szeto (SBN 305961)
priscilla.szeto@nelsonmullins.com
Crispin L. Collins (SBN 311755)
crispin.collins@nelsonmullins.com
19191 South Vermont Avenue, Suite 900
Torrance, CA 90502
Telephone:      424.221.7400
Facsimile:      424.221.7499

Attorneys for Defendant
TAWKIFY, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO

| | |
|---|---|
| JEREMY STANFIELD, on behalf of himself and all others similarly situated,<br><br>             Plaintiff,<br><br>    v.<br><br>TAWKIFY, INC., et al.; and DOES 1 -25,<br><br>             Defendants. | Case No. 3:20-cv-07000-WHA<br><br>Assigned to Hon. William H. Alsup<br><br>**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**<br><br>**TAWKIFY, INC.'S OPPOSITION TO PLAINTIFF JEREMY STANFIELD'S MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT**<br><br>[Filed concurrently with the Declarations of Jahmy S. Graham and Thane Schultz in support thereof]<br><br>Hearing Date:   July 22, 2021<br>Hearing Time:  8:00 a.m.<br>Courtroom:      12<br><br>Date Removed: October 7, 2020<br>Date Filed:      August 17, 2020 |

# **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................. 1

II.     RELEVANT BACKGROUND ............................................................................. 5

III.    STANDARD OF REVIEW ................................................................................... 9

IV.     ARGUMENT ...................................................................................................... 10

        A.      Amending the FAC Is Futile Because the Law Does Not Support Plaintiff's
                New Claims........................................................................................... 10

        B.      Plaintiff's Motion Should Be Denied for Undue Delay.............................. 13

        C.      Plaintiff's Motion Should Be Denied Due to Unfair Prejudice. ................ 15

V.      CONCLUSION................................................................................................... 17

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

5

*Ahlmeyer v. Nevada Sys. of Higher Educ.*,
  555 F.3d 1051 (9th Cir. 2009) ...............................................................10

6

7

*Allen v. City of Beverly Hills*,
  911 F.2d 367 (9th Cir. 1990) ...............................................................10

8

*AmerisourceBergen Corp. v. Dialysist West, Inc.*,
  465 F.3d 946 (9th Cir. 2006) ...........................................................9, 14

9

10

*Bonin v. Calderon*,
  59 F.3d 815 (9th Cir. 1995) ...............................................................10

11

*Broadcom Corp v. NXP Semiconductors N.V.*,
  No. 8:13-cv-829-MRP-MAN, 2014 WL 12577095 (C.D. Cal. March 12, 2014) ..................15

12

13

*Chau Van v. City of Oakland*,
  No. 13-CV-00992-JCS, 2015 WL 995127 (N.D. Cal. Mar. 4, 2015) ....................................15

14

15

*D.C. by & through Garter v. Cty. of San Diego*,
  No. 15-CV-1868-MMA (NLS), 2021 WL 242940 (S.D. Cal. Jan. 25, 2021) ........................15

16

17

*Gabrielson v. Montgomery Ward & Co.*,
  785 F.2d 762 (9th Cir. 1986) ...............................................................10

18

*Graebner v. Wm. Page & Assocs., Inc.*,
  No. C 12-01694 WHA, 2016 WL 537941 (N.D. Cal. Feb. 11, 2016) ....................................14

19

20

*Hall v. Nat'l R.R. Passenger Corp.*,
  No. C19-02312 WHA, 2020 WL 1504480 (N.D. Cal. Mar. 30, 2020) ........................4, 9, 13

21

*Himmelfarb v. JP Morgan Chase Bank Nat. Ass'n*,
  2011 WL 4498975 (D. Haw. Sept. 26, 2011) ....................................9, 14

22

23

*Horowitz v. GC Servs. Ltd. P'ship*,
  2016 WL 7188238 (S.D. Cal. Dec. 12, 2016)............................................................12

24

25

*Johnson v. Buckley*,
  356 F.3d 1067 (9th Cir. 2004) ...............................................................10

26

*Johnson v. Mammoth Recreations, Inc.*,
  975 F.2d 604 (9th Cir. 1992) .........................................................................9

27

28

*Kearney v. Salomon Smith Barney, Inc.*,
  39 Cal. 4th 95 (2006) ...............................................................12, 13

*Loehr v. Ventura County Community College District*,
    743 F.2d 1310 (9th Cir. 1984) ................................................................13

*M/V Am. Queen v. San Diego Marine Const. Corp.*,
    708 F.2d 1483 (9th Cir. 1983) ...............................................................15

*Maghen v. Quicken Loans Inc.*,
    94 F. Supp. 3d 1141 (C.D. Cal. 2015), *aff'd in part, dismissed in part*, 680 F.
    Appx. 554 (9th Cir. 2017)..............................................................12, 13

*NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Southwest, Inc.*,
    2016 WL 4886933 (S.D. Cal. Sept. 15, 2016) ........................................12

*Nunes v. Ashcroft*,
    375 F.3d 810 (9th Cir. 2004), cert. denied, 543 U.S. 1188 (2005) ........................10

*Quesada v. Banc of Am. Inv. Servs., Inc.*,
    No. 11-CV-01703 YGR, 2013 WL 623288 (N.D. Cal. Feb. 19, 2013)..................13

*Roberts v. Ariz. Bd. Of Regents*,
    661 F.2d 796 (9th Cir. 1981) ..................................................................15

*Trans Video Electronics, Ltd. v. Sony Electronics, Inc.*,
    278 FRD 505 (N.D. Cal. 2011)...............................................................16

*TransUnion LLC v. Ramirez*,
    No. 20-297, 2021 WL 2599472 (U.S. June 25, 2021) ............................3

*Western Shoshone Nat'l Council v. Molini*,
    951 F.2d 200 (9th Cir. 1991), cert. denied, 506 U.S. 822 (1992) ........................10

*White v. FIA Card Servs., Inc.*,
    2013 WL 756292 (S.D. Cal. Feb. 26, 2013) ...........................................12

**Statutes**

Cal. Penal Code § 632(a) .........................................................................12

Cal. Penal Code § 632(d) .........................................................................16

Cal. Civ. Code § 1694, *et seq.*...................................................................1

Fed. R. Civ. P. 16(b)(3)(A) .........................................................................9

Fed. R. Civ. P. 16(b)(4).............................................................................9

## I.     **INTRODUCTION**

Plaintiff Jeremy Stanfield ("Plaintiff") seeks leave for an eleventh-hour amendment to salvage an action in peril of potential dismissal due to his lack of standing to pursue his purported claims.  The introduction of his Motion for Leave to File a Second Amended Complaint (the "Motion") reaffirms that this putative class action was filed to purportedly vindicate alleged violations of California's Dating Services Contract Act, Cal. Civ. Code § 1694, *et seq.* (the "DSCA").  Namely, Plaintiff alleges that Defendant Tawkify, Inc. ("Tawkify") did not alert him of his right to cancel the parties' contract within three days of purchasing the company's matchmaking services and receive a refund of all monies paid up to that point.  The central basis of Plaintiff's claims against Tawkify—and each cause of action within the First Amended Complaint ("FAC") (Dkt. 26.)—is tethered to these alleged violations.  Now, on the heels of the Court considering Tawkify's converted-Motion for Summary Judgment ("MSJ")—for which Tawkify's supplemental brief is due on June 30, 2021—Plaintiff seeks to broaden this case to an alleged "secret recording" of Plaintiff's initial "sales" call with a Tawkify Member Services ("MS") representative purportedly in violation of California's Invasion of Privacy Act ("CIPA").  The CIPA essentially requires advance notice to call participants that a call may be recorded.

The problem for Plaintiff, however, is that the call being recorded was no secret.  As Tawkify does in the ordinary course of business with potential clients, Tawkify notified Plaintiff **before** his call with MS that calls may be "recorded for record-keeping, training and quality-assurance purposes."  Surprisingly, Plaintiff did **not** disclose to the Court in his Motion (or in the supporting declaration) that he had in fact received such **written** confirmation from Tawkify via email **before** his call with a Tawkify representative that the call may be recorded.  In fact, when Tawkify propounded document requests asking him to produce his communications with the company, Plaintiff initially did not even produce this written confirmation that he had received from Tawkify.  Instead, just this past Thursday, June 24th—sixteen (16) days **after** Plaintiff filed his Motion and five (5) days before Tawkify's MSJ is due—he finally produced the email written confirmation that Tawkify had provided to him more than a week before his call with MS.  Thus, when Plaintiff told this Court in his Motion that it was "[u]nbeknownst to Plaintiff until recently" that his call with MS could be recorded, Plaintiff withheld

TAWKIFY'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE SAC

1   the truth from the Court.  (*See* Plaintiff Jeremy Stanfield's Motion for Leave to File Second

2   Amended Complaint ("Mot."), Dkt. 71, at 1:12-13.)

3        Beyond Plaintiff's attempts to distract the Court from the core issues in this case, the

4   fundamental facts are that Plaintiff used Tawkify's matchmaking services for several weeks,

5   culminating in him attending two dates that Tawkify planned with two separate matches who

6   Tawkify had specially curated.  Plaintiff—purportedly dissatisfied with the quality of his dates—

7   complained and, for customer satisfaction reasons, was offered additional nonrefundable bonus

8   dates.  But Plaintiff ultimately chose to cancel his contract with Tawkify instead of going on these

9   bonus dates.  Shortly after cancelation, Tawkify gave Plaintiff a complete refund for the services he

10   had not yet used.  This is all that Plaintiff was entitled to under the DSCA—a prompt refund for

11   services not yet used.  Tawkify later, before being served with the summons and complaint in this

12   action, went above and beyond what is required under the DSCA and gave Plaintiff a refund of **<u>all</u>**

13   monies he paid to the company—notwithstanding him receiving (among other things) the benefit of

14   two dates with women, essentially for free.  Tawkify did this, even though Plaintiff lied to Tawkify

15   and misrepresented facts about himself and his conduct, as he admitted during his recent deposition.

16        Plaintiff has never alleged that had he been made aware of his right under the DSCA to

17   cancel within three days of entering his contract with Tawkify for any reason and receive a full

18   refund of all monies paid, he would have done so.  His proposed SAC does not even allege it.  On

19   the contrary, it is undisputed that Plaintiff's reason for cancelling his contract with Tawkify, *i.e.*, a

20   dissatisfaction with the quality of his dates, did not arise until weeks into using Tawkify's services—

21   well after the DSCA's statutory right to a full refund had expired.  Plaintiff claims he became aware

22   of this three-day right to cancel and the DSCA in general over two months after he entered his

23   contract with Tawkify—on or about August 7, 2021.  Not coincidentally, on August 7, 2021,

24   Plaintiff sent an email to Tawkify demanding a full refund—***not*** on the theory that he had been

25   misled about his statutory rights and would have cancelled sooner ***but instead*** arguing that

26   Tawkify's services to that point were so poor that they should not count, as purportedly evidence

27   by Tawkify's offer of nonrefundable bonus dates, writing, "The two dates I went on were bs and

28   your reps admitted that and said I would get credit for both. Meaning they don't count and I should

get all my money back!"  After Tawkify declined at that point to give Plaintiff an additional refund for services he had already received, Plaintiff sent another August 7, 2021 email stating, "[T]at's cool, prepared [*sic*] to get sued and I'll make sure it's a class action because you are clearly miss representing [*sic*] and taking advantage of people!· Enjoy the loss of business and money that's coming to you!!"

The FAC seeks statutory damages under the DSCA based on Tawkify's alleged procedural failure to make certain statutorily required disclosures, such as the right to cancel within three days and receive a full refund of all monies paid within that period.  The United States Supreme Court, however, recently reaffirmed that a plaintiff does not have standing unless s/he can point to a "concrete harm" that is particularized to him/her beyond a defendant's failure to comply with a regulatory law regardless of any statutory damages purportedly available.  *TransUnion LLC v. Ramirez*, No. 20-297, 2021 WL 2599472, at *8 (U.S. June 25, 2021) ("An uninjured plaintiff who sues in those circumstances is, by definition, not seeking to remedy any harm to herself but instead is merely seeking to ensure a defendant's 'compliance with regulatory law' (and, of course, to obtain some money via the statutory damages).").

That is what this case is about—(i) Plaintiff's desire for an additional refund for services he had already received based on of his dissatisfaction with those services and (ii) an attempt to retrofit a statutory claim under the DSCA to his action based on an alleged violation of a regulatory law that did not affect, let alone damage, Plaintiff.  This case is not about some last-minute maneuvering to broaden the scope of Plaintiff's deficient claims and add claims that have nothing to do with purported violations of the DSCA.

Not only is Plaintiff's proposed amendment futile because the "new" claims lack merit on their face, but Tawkify would suffer substantial and undue prejudice if this untimely request for amendment is allowed at this late hour—well **after** the Court's deadline for amendment of pleadings and on the precipice of the discovery cutoff and the Court evaluating whether Plaintiff's claims should be resolved through summary judgment.  As an initial matter, Plaintiff did not first seek modification of the Court's scheduling order.  The Ninth Circuit has held that a party's failure to seek modification of the scheduling order is sufficient grounds for denying the untimely Motion.

1   The same has been echoed by this Court in *Hall v. Nat'l R.R. Passenger Corp.*, No. C19-02312

2   WHA, 2020 WL 1504480, at *1 (N.D. Cal. Mar. 30, 2020) (Alsup, W.) ("Rule 15(a) does not apply,

3   however, when a district court has established a deadline for amended pleadings under Rule 16(b)").

4   This failure alone is enough to deny Plaintiff's Motion.  Beyond that, Plaintiff's delay in seeking

5   amendment is inexcusable and would substantially, and unduly, prejudice Tawkify because it would

6   hamper its ability to have the Court meaningfully consider its MSJ.  As Plaintiff's own Motion

7   acknowledges, "prejudice [is] established where new claims 'would have greatly altered the nature

8   of the litigation and would have required defendants to have undertaken, at a late hour, an entirely

9   new course of defense.'"  (Mot. at 5:4-7 (quoting *Morongo Band of Mission Indians v. Rose*, 893

10   F.2d 1074, 1079 (9th Cir. 1990)).)  The proposed amendment would throw off the existing case

11   management schedule; moot Tawkify's MSJ, which would result in a waste of substantial time,

12   effort, and cost; and ultimately prove to be unwarranted in light of the totality of the circumstances.

13       Further, one consequence of not giving notice before a call being recorded is that the

14   recording is not admissible in a legal proceeding.  As Plaintiff and his counsel know, there are

15   impeachable facts in the recorded call that further highlight Plaintiff's lack of standing and lack of

16   candor with Tawkify and this Court.  If Plaintiff's incomplete and inaccurate allegations about a

17   purported lack of notice from Tawkify were to prevail—especially when notice was in fact given—

18   Tawkify would be further prejudiced in not being able to fully defend itself against Plaintiff's

19   deficient and contradictory claims.

20       Plaintiff offers no credible reason why this belated request could not have been sought much

21   sooner if gamesmanship were not involved.  For example, Tawkify produced the purported "secret"

22   recording on April 22, 2021—47 days before his Motion was filed.[1]  That was eight (8) days before

23   the deadline to amend the complaint.  The Court then set June 30, 2021 as the deadline for the parties

24   to complete Plaintiff-specific discovery and for Tawkify to file its supplemental brief in support of

---

[1] Despite Plaintiff's false claims that the call being recorded was a secret, Tawkify readily and prominently produced the recording.  It was not buried in a voluminous production.  It was in a single folder of a production of just 29 documents and was the **only** audio file produced.  (*See* Declaration of Jahmy S. Graham ("Graham Decl.") in Support of Tawkify's Opposition to Plaintiff's Motion for Leave to File a Second Amended Complaint, ¶ 8.)  It was thus easy to find and not hidden by Tawkify in any respect.

its converted MSJ.  Plaintiff waited until just three (3) weeks before Tawkify's deadline to file its supplemental brief to raise this issue that could have been raised more than two (2) months ago— before the Court's deadline to amend pleadings without leave.  This sort of gamesmanship should be discouraged and not be rewarded—particularly when the proposed amendment raises new claims so detached from the fundamental nucleus of this case and would cause Tawkify at a late hour to embark on an entirely new course of defense, seeking and responding to additional discovery requests on a tangential and meritless issue at best.

Tawkify thus respectfully requests that the Court deny Plaintiff's motion for leave to amend the complaint for failing to make the requisite showing under Federal Rules of Civil Procedure 15 or 16.

## II.   **RELEVANT BACKGROUND**[2]

### A.  **Factual Allegations within the FAC**

Plaintiff initiated contact with Tawkify in June 2020.  (FAC, ¶ 13.)  After communicating with a Tawkify sales representative [incorrectly identified by Plaintiff in the FAC as an "expert matchmaker"], Plaintiff purchased a six-match package."  (*See id.*, ¶¶ 14-16.)  Plaintiff met his first match on or about July 11, 2020 and complained that the matchmaker "ignored" his preferences; as a courtesy, Tawkify offered Plaintiff a nonrefundable bonus match.  (*See id.*, ¶ 19.)  Plaintiff alleges to having felt similarly "incompatible" with the second match he met on July 14, 2020 and once again "contacted the matchmaker to complain," resulting in another alleged bonus match.  (*See id.*, ¶ 20.)  Plaintiff claims that he notified Tawkify on or about July 17, 2020 to cancel the agreement and demand a full refund (although the parties disagree on which exact day in July 2020 Plaintiff *unequivocally* sought cancellation).  (*Id.*, ¶ 20; *cf.* Declaration of Thane Schultz in Support of Motion to Dismiss ("Schultz Decl. ISO MTD"), Dkt. 50-1, ¶ 4 (stating that "Plaintiff Stanfield unequivocally requested a full refund on or about July 22, 2020.")

Unsatisfied with the purportedly "partial" refund he received on August 1, 2020, Plaintiff filed this action.  (*See* FAC, ¶ 24.)  Plaintiff later accepted a refund of all monies paid, including for

---

[2] A more extensive recitation of the factual allegations from the FAC in this matter is detailed in Tawkify's Motion to Dismiss. (Dkt. 50.)  An abridged version is provided herein.

the services already rendered, prior to filing the operative FAC.  (*See* Declaration of Kellie K. Ammerman, Dkt. 29-1, ¶ 11 (stating that Plaintiff received a full and complete refund on August 26, 2020); *and see*, this Court's Order denying Tawkify's Motion to Compel Arbitration, Dkt. 46, at 1 (finding that Plaintiff "received a full refund").)

Plaintiff alleges in the FAC that Tawkify violated the DSCA by not including certain disclosures and/or information required under the DSCA in its agreements with Plaintiff, specifically, a consumer's right to cancel within three days of entering into the contract and receive a full refund, regardless of whether services were already rendered;  a consumer's rights to cancel and be relieved from making further payments due to death, disability, or relocation; and a designated operator and email address for consumers to contact for cancellations.  (*See* FAC.) Plaintiff further complains that he was entitled to a full refund of all monies prepaid within ten (10) days of canceling under the DSCA.  The FAC contains three causes of action: (1) violations of the DSCA, (2) violations of California's Unfair Competition Law based on those same alleged DSCA violations, and (3) violations of California's Consumer Legal Remedies Act, also based on the same alleged DSCA violations.  (*Id*.)

In response to Plaintiff's FAC, Tawkify moved to compel arbitration under the Terms of Use to which Plaintiff agreed, which contained a binding arbitration provision and class action waiver.  (Dkt. 29.)  The Court issued an order denying Tawkify's motion to compel arbitration (Dkt. 46), and Tawkify has appealed that order to the Ninth Circuit, with its opening brief being due July 14, 2021.

**B.  <u>Tawkify's Motion to Dismiss Converted to a Motion for Summary Judgment</u>**

Tawkify moved to dismiss these claims for, among other reasons, Plaintiff's lack of standing.  (Dkt. 50.)  In short, Plaintiff did not seek cancellation within three days (he was thereby not entitled to a full refund of services already rendered), did not allege to cancelling by reason of disability or death, and admits to accepting meetings with two matches and contacting Tawkify's representatives without issue.  (*See generally* FAC.)

During the hearing on Tawkify's Motion to Dismiss on March 25, 2021, the Court converted Tawkify's motion to dismiss into a motion for summary judgment.  (Dkt. 62.)  The motion was held

1  in abeyance while the Parties exchange limited discovery on Plaintiff's individual claims and submit

2  supplemental briefs.  (*Id.*)  Having found "enough of a standing question," the Court ordered that

3  "classwide discovery will not be allowed at this point" and narrowed permissible discovery "to what

4  happened with Mr. Stanfield and **his dealings** with the company and particular dates and so forth."

5  (*See* Graham Decl., Ex. A, March 25, 2021 Hearing Transcript ("March Hearing Transcript") at

6  41:17-42:9 (emphasis added).)  Specifically, the parties may only engage in discovery and take

7  depositions on the "two dates," "this account," and what Plaintiff knew about **his** right to a refund,

8  and when. (*See id.*)  The Court further noted that it believed "there is a 50/50 chance this case will

9  get thrown out on summary judgment."  (*Id.* at 46:10-11.)  The Court set the discovery cutoff for

10  **June 30, 2021**.

11  **C.  <u>Discovery Between the Parties</u>**

12      On November 25, 2020, Tawkify was served with twenty-two document production

13  requests, in which many were seeking information about the putative class, including the identities

14  of Tawkify users (*See e.g.*, Graham Decl., Ex. B., Plaintiff's First Set of Requests for Production of

15  Documents to Defendant Tawkify, Inc., Request No. 2 ("All REPORTS which reflect the total

16  number of PUTATIVE CLASS MEMBERS"); *and see e.g.*, *id.* at Request no. 16 ("DOCUMENTS

17  sufficient to IDENTIFY all PUTATIVE CLASS MEMBERS").)  Tawkify timely responded and

18  properly objected to this discovery set by or before its deadline.  (Graham Decl. at ¶ 4.)  Plaintiff

19  did not move to compel further responses or production by or before his statutory deadline to do so.

20  (Graham Decl. at ¶ 5.)

21      In January 2021, the Court noted that it would not allow discovery, much less class discovery,

22  until Tawkify's motion to compel arbitration was decided.  (*See* Graham Decl., Ex. C, January 27,

23  2021 Hearing Transcript at 63:9-12.)  On March 26, 2021, after the Court issued its Order limiting

24  discovery to Plaintiff's individual issues only, Plaintiff's counsel emailed Tawkify's counsel to

25  informally request further responses to a select number of requests from the discovery set served on

26  November 25, 2020, and from the interrogatories served on January 15, 2021 (to which Tawkify also

27  timely responded and properly objected to).  (Graham Decl., ¶ 7.)  As these requests were previously

28  intended to seek information about the putative class, Plaintiff offered to narrowly tailor the served

requests to his individual issues only. (*Id.* ¶ 8.) Tawkify agreed to provide further responses and produce responsive documents to the narrowed requests, thus obviating the need for Plaintiff to serve new discovery requests. (*Id.*) Tawkify's further responses and document production, including the recording at issue, were produced on April 22, 2020. (*Id.*)

Plaintiff has since admitted in written discovery responses that he did not cancel by reason of death or disability. (*See* Graham Decl., Ex. D., Plaintiff's Response to Defendant Tawkify, Inc.'s Requests for Admission, Set One (admitting to requests numbers 16 and 17).) Plaintiff made numerous admissions in his deposition on the issue of standing, including that Tawkify did not "completely ignore" his dating preferences (*see* Graham Decl., Ex. E, Transcript of Plaintiff's Deposition ("Stanfield Depo. Transcript") at 202:10-15); that he misrepresented details about himself to Tawkify (*see, e.g., id.* at 150:6-152:4); and that he was informed several times in writing before filing suit that the bonus matches offered were non-refundable (*see, e.g., id.* at 235:13-236:7).

On June 3, 2021, approximately one week after Plaintiff's deposition, Plaintiff's counsel emailed Tawkify's counsel to advise—for the first time—that he would seek leave to file a second amended complaint. (Graham Decl., ¶ 11.) On June 8, 2021, Plaintiff filed his Motion and served a Notice of Deposition of Tawkify's Person Most Knowledgeable, in which Plaintiff identified Tawkify's policies on call recordings as a deposition subject matter. (Graham Decl., ¶ 12.) Tawkify served objections to the deposition notice, including as to exceeding the limited scope authorized by the Court. (*Id.*) Tawkify also reasserted its scope objections, including on the recording issue, at the deposition on the record. (*Id.*)

**D.** **Plaintiff Received Written Notice Before His Initial Call with Tawkify That Disclosed That His Call May Be Recorded.**

Initial calls with Tawkify Member Services ("MS") representatives must be scheduled through a program called Calendly. (*See* Declaration of Thane Schultz in Support of Opposition to Mot. ("Schultz Decl."), ¶ 2.) Tawkify notifies prospective clients (including Plaintiff) in writing that their calls with Tawkify MS representatives may be recorded ***before*** any call takes place. (*Id.*, ¶ 3.) Specifically, the prospective client receives a written message via email stating that the call may be recorded for training or quality purposes. (*Id.*)  Here, on the morning June 16, 2020, Plaintiff

received an email confirming that a Tawkify representative would be calling him on June 19, 2020 with the notice of recording that all prospective Tawkify clients receive: "Note: This call may be monitored and recorded for record-keeping, training and quality-assurance purposes." (*Id.*, Ex. A [Bates Number STANFIELD000153].)  The call was later rescheduled and ultimately took place on June 26, 2020.  (*Id.* [STANFIELD000158].)  Although Plaintiff did not produce the email in the ordinary course of discovery and he failed to apprise the Court in his Motion (and supporting declaration) of this key piece of relevant evidence, Tawkify hereby provides it to the Court.  On June 23, 2021, Tawkify had to specifically demand that Plaintiff produce this email confirmation, which as of last week still had not been produced. (Graham Decl., ¶ 16, Ex. I.)  Plaintiff's counsel finally turned it over on June 24, 2021.  (*Id.*)

## III.   <u>STANDARD OF REVIEW</u>

Pursuant to Rule 16 of the Federal Rule of Civil Procedure, a "scheduling order must limit the time to join other parties, amend the pleadings, complete discovery, and file motions."  Fed. R. Civ. P. 16(b)(3)(A).  The order "may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  "A scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992) (internal quotes omitted).  Moreover, "[a] party's failure to seek modification for the scheduling order remains grounds to deny the untimely motion. *Hall v. Nat'l R.R. Passenger Corp.*, No. C19-02312 WHA, 2020 WL 1504480, at *1 (N.D. Cal. Mar. 30, 2020) (Alsup, W.) (citing *Johnson*, 975 F.2d at 608-09).

Where a motion for leave to amend is filed after entry of a Rule 16 scheduling order, the movant cannot "appeal to the liberal amendment procedures afforded by Rule 15." *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 952 (9th Cir. 2006).  Instead, the movant must "satisfy the more stringent 'good cause' showing required under Rule 16." *Id.*; *see also Himmelfarb v. JP Morgan Chase Bank Nat. Ass'n*, 2011 WL 4498975, at *3 n. 3 (D. Haw. Sept. 26, 2011).  The term "good cause" means the scheduling deadlines cannot be met despite party's diligence. *Johnson*, 975 F.2d at 609.  Carelessness does not satisfy the "good cause" requirement. *Id.* "Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of

the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)' s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Id.* (emphasis added). "If that party was not diligent, the inquiry should end." *Id.*

In determining whether to grant leave to amend under Rule 15, courts often consider bad faith, undue delay, prejudice to the opposing party, futility of the amendment, and whether the party has previously amended his pleadings. *Western Shoshone Nat'l Council v. Molini*, 951 F.2d 200, 204 (9th Cir. 1991), cert. denied, 506 U.S. 822 (1992). Not all factors are given equal weight. For example, a district court does not abuse its discretion in denying a motion to amend where the movant presents ***only new theories*** and provides no satisfactory explanation for the failure to fully develop these contentions originally. *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995); *Allen v. City of Beverly Hills*, 911 F.2d 367, 374 (9th Cir. 1990) (emphasis added)

In addition, "[f]utility alone can justify the denial of a motion to amend." *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004); *see also Ahlmeyer v. Nevada Sys. of Higher Educ.*, 555 F.3d 1051, 1055 (9th Cir. 2009) (denying leave to amend and noting that futility of the amendment alone can justify the denial of the motion).

## IV.   ARGUMENT

### A.   Amending the FAC Is Futile Because the Law Does Not Support Plaintiff's New Claims.

Futility alone can justify denial of a motion for leave to amend. *Nunes v. Ashcroft*, 375 F.3d 810, 813 (9th Cir. 2004), cert. denied, 543 U.S. 1188 (2005); *see also Gabrielson v. Montgomery Ward & Co.*, 785 F.2d 762, 766 (9th Cir. 1986) (noting that a motion to amend should not be granted when the amendment could be defeated on summary judgment). Here, Plaintiff's proposed SAC is futile because Plaintiff was actually provided notice of the call recording and ultimately because Plaintiff demonstrably lacks standing to pursue his original claims as well as his "new" claims. Plainly, his new legal theory is without merit, legally insufficient, deficiently pled, and is refuted by proffered evidence that Plaintiff hid from this Court in the opening brief of his Motion and the supporting declaration.

Ultimately, as Tawkify will demonstrate more fully in its forthcoming supplemental brief

for the converted Motion for Summary Judgment, the discovery exchanged since this Court's March 25, 2021 Order, including the deposition of Plaintiff, has only confirmed this Court's suspicion that Plaintiff lacks standing to maintain his claims. Plaintiff has put forth no evidence that he suffered damages from the purported DSCA violations he identified in the FAC. Plaintiff admits that:

- He did not know about (and thus it could not have impacted his reasons for canceling) the DSCA requirements for dating services contracts (*see* Graham Decl., Ex. F., Plaintiff's Supplemental to Defendant Tawkify, Inc.'s Interrogatories, Set One (responses to interrogatories 2 and 3));

- Tawkify informed him that he would get a full and complete refund if he was not selected as a Tawkify client (this would occur within the first few days after purchase), and such notice was given/received before or at the time he made his purchase (Graham Decl., Ex. E, Stanfield Depo. Transcript at 50:22-51:3);

- He continued to use Tawkify's services after three days had passed from his purchasing of the company's matchmaking services;

- Tawkify set him up with two matches (dates) with two different women on different days, and that he did in fact go on both dates;

- He did not cancel by reason of disability or death; and

- He was able to contact Tawkify representatives without issue to complain, seek cancelation, and demand (and ultimately receive) a refund.

Plaintiff even admitted in his deposition that he "lied to Tawkify" (Stanfield Depo. Transcript at 195:8-9) and made misrepresentations of fact about himself and his conduct, including details that reasonably impacted his designated matchmaker's ability to properly match him to his actual preferences. (*See, e.g., id.* at 150:6-152:4.) Further, when confronted with documents he produced to Tawkify in response to Tawkify's document requests, Plaintiff conceded to being made aware of several details during his interactions with Tawkify before this lawsuit arose that he previously claimed, *i.e.*, in the FAC, Tawkify had either misrepresented or concealed. (*See, e.g. id.* at 103:1-119:7 (admitting that he received advance written notice that dates could be virtual/Zoom and was told before utilizing Tawkify's services that Tawkify's potential matches for him could be

1   reduced by 70% percent because he insisted on only doing in person, rather than Zoom/virtual dates,

2   and 70% of Tawkify clients were not comfortable with in person dates at the time due to COVID-

3   19), *see id.* at 235:13-236:7 (admitting that he was told in "crystal clear" writing that the bonus

4   matches he was offered were "nonrefundable").)  Based on his conduct in withholding in discovery

5   and from this Court when he filed the instant Motion the proof that he was given advance notice

6   that his call with MS may be recorded, Plaintiff's misrepresentations may not have stopped with his

7   interactions with Tawkify.   Plaintiff's lack of candor with the Court further supports why

8   amendment would be futile.

9          Moreover, Plaintiff's proposed SAC contains new claims under CIPA, which are vastly

10  different from his DSCA claims.  The elements for a violation of CIPA are: (i) the intentional

11  recording, (ii) of a confidential communication, (iii) without consent of all parties to the

12  conversation.  *See* Cal. Pen. Code § 632(a).  "[C]onsent is a **complete defense** to a Section 632.7

13  claim."  *Maghen v. Quicken Loans Inc.*, 94 F. Supp. 3d 1141, 1145 (C.D. Cal. 2015), *aff'd in part,*

14  *dismissed in part*, 680 F. Appx. 554 (9th Cir. 2017) (emphasis added).  Moreover, consent may be

15  given either expressly or by implication. *NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac.*

16  *Southwest, Inc.*, 2016 WL 4886933, at *3 (S.D. Cal. Sept. 15, 2016); *Horowitz v. GC Servs. Ltd.*

17  *P'ship*, 2016 WL 7188238, at *15 (S.D. Cal. Dec. 12, 2016).

18         Courts have found that a plaintiff gives express consent for call recording when s/he agreed

19  in writing that telephone calls with a company's employees may be recorded.  *See e.g., Maghen*, 94

20  F. Supp. 3d at 1143, 1145-46 (the plaintiff agreed to the defendant-lender's written terms of use,

21  which allowed for call recording, when he applied for a loan); *White v. FIA Card Servs., Inc.*, 2013

22  WL 756292, at *3-5 (S.D. Cal. Feb. 26, 2013) (consent was given as the credit card agreement

23  between the parties stated, "You consent to and authorize FIA Card Services, any of its affiliates,

24  or its marketing associates to monitor and/or record any of your telephone conversations with our

25  representatives or the representatives of any of those companies"); *see also Kearney v. Salomon*

26  *Smith Barney, Inc.*, 39 Cal. 4th 95, 118 (2006) ("If, after being [advised about call recording],

27  another party does not wish to participate in the conversation, he or she simply may decline to

28  continue the communication.").

1
2
3
4
5
6
7
8

Here, Plaintiff Stanfield was given written notice more than a week before the call with MS and had the call with MS anyway.  The disclosure was not hidden in a long contract or Terms of Use—and even then some courts have held such a disclosure would have been sufficient.  *E.g.*, *Maghen*, 94 F. Supp. 3d at 1143, 1145-46.  Instead, Plaintiff Stanfield received a one-page email that was about his initial call with MS, and which prominently contained the written disclosure about the call being recorded.  Had he disagreed, he could have elected to not go forward with the call or ask that it not be recorded.  He did not do so.  Thus he impliedly consented to the call being recorded and his claims of alleged violation of the CIPA are without merit.

9
10
11
12
13
14
15
16
17
18
19
20
21

Further, because Plaintiff was provided notice, he has no standing to bring a claim under the CIPA, much less on a classwide basis.  *See Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 118 (2006) (finding that a cause of action cannot be maintained under CIPA if a plaintiff is given notice of the intent to record the call).  Even though it is beyond the scope of this Motion because the Court has limited the scope of this case to Plaintiff's individual claims for the time being, notwithstanding Plaintiff's attempts to once again prematurely assert putative class claims, even if Plaintiff wishes to dispute whether every Tawkify client receives proper notice that calls may be recorded, doing so would only undermine his putative class action claims under the CIPA.  Federal District Courts in California, including in the Northern District of California, have denied class certification regarding claims under the CIPA when there is a factual dispute based on a lack of commonality regarding whether every putative class member received notice.  *See, e.g, Quesada v. Banc of Am. Inv. Servs., Inc.*, No. 11-CV-01703 YGR, 2013 WL 623288, at *5–7 (N.D. Cal. Feb. 19, 2013).

22

## B.   Plaintiff's Motion Should Be Denied for Undue Delay.

23
24
25
26
27
28

Delay is a relevant consideration to be weighed in determining whether to grant a motion to amend.  *Loehr v. Ventura County Community College District,* 743 F.2d 1310, 1320 (9th Cir. 1984).  Moreover, "[a] party's failure to seek modification for the scheduling order remains grounds to deny the untimely motion."  *Hall v. Nat'l R.R. Passenger Corp.*, No. C19-02312 WHA, 2020 WL 1504480, at *1 (N.D. Cal. Mar. 30, 2020) (Alsup) (citing *Johnson*, 975 F.2d at 608-09).  Where a motion for leave to amend is filed after entry of a Rule 16 scheduling order, the movant cannot

1   "appeal to the liberal amendment procedures afforded by Rule 15."  *AmerisourceBergen Corp. v.*

2   *Dialysist West, Inc.*, 465 F.3d 946, 952 (9th Cir. 2006).  Instead, the movant must "satisfy the more

3   stringent 'good cause' showing required under Rule 16."  *Id.*; *see also Himmelfarb v. JP Morgan*

4   *Chase Bank Nat. Ass'n*, 2011 WL 4498975, at *3 n. 3 (D.Haw. Sept. 26, 2011).

5          Here, the Court's deadline to amend pleadings expired on April 30, 2021.  (Dkt. 40.)  Yet,

6   Plaintiff has failed to first move to modify the Court's scheduling order.  Moreover, even if

7   Plaintiff's claim that "had Tawkify produced the recording on January 29, 2021, as it was required to,

8   Plaintiff would have sought leave to amend by March 17, 2021" was accepted as true—which it is not

9   for the reasons detailed in the relevant background as to Plaintiff's failure to file a motion to compel

10  any such production, and the Court's explicit limitation on Tawkify responding to discovery requests

11  until after the motion to compel arbitration was decided—there was more than enough time for Plaintiff

12  to timely raise this issue.  A delay cannot be justified by purportedly late arriving documents when

13  Plaintiff did not move to compel said documents in the first place.  *Graebner v. Wm. Page & Assocs.,*

14  *Inc.*, No. C 12-01694 WHA, 2016 WL 537941, at *2 (N.D. Cal. Feb. 11, 2016) (Alsup, W.) ("Plaintiffs

15  could have and should have moved to compel these third parties to produce these documents sooner

16  and should have filed such motions before the close of discovery.").

17         Plaintiff received the recording at issue prior to the expiration of the Court's deadline for the

18  parties to amend pleadings.  Plaintiff did not move for an order to modify the current scheduling order.

19  Further, Plaintiff held onto this "new information" for approximately **six weeks**, until after Tawkify's

20  deposition of Plaintiff had concluded, to begin meet and confer efforts on seeking leave to file a Second

21  Amended Complaint relating to this call recording.  Without first moving to modify the order, or

22  properly demonstrating good cause under Rule 16, Plaintiff's Motion largely argues under Rule 15's

23  more deferential standard, which he is not entitled to be considered under until and unless he meets

24  good cause under Rule 16.  This Court has stated itself that a failure to move for a modified scheduling

25  order can be sufficient grounds to deny Plaintiff's untimely motion.  Plaintiff's delay and failure to

26  specifically seek relief from the Court's scheduling order are thus sufficient grounds on their own to

27  deny the Motion. But there are even more reasons.

28

### C.     Plaintiff's Motion Should Be Denied Due to Unfair Prejudice.

A nonmoving party is unfairly prejudiced when a proposed amended complaint contains new allegations, claims, and/or defendants and would "totally alter the basis of the action."  *M/V Am. Queen v. San Diego Marine Const. Corp.*, 708 F.2d 1483, 1492 (9th Cir. 1983); *see, e.g., D.C. by & through Garter v. Cty. of San Diego*, No. 15-CV-1868-MMA (NLS), 2021 WL 242940, at *3 (S.D. Cal. Jan. 25, 2021) (original complaint alleged a class action on behalf of a minor who was allegedly unlawfully examined by medical staff without his mother's knowledge or permission; proposed amended complaint, which was rejected by the court, sought to add claims that the minor [and proposed class] was unlawfully removed from his mother's custody prior to the alleged unlawful examination); *see also Broadcom Corp v. NXP Semiconductors N.V.*, No. 8:13-cv-829-MRP-MAN, 2014 WL 12577095 (C.D. Cal. March 12, 2014) ("A party may be prejudiced by a Court's grant of a motion for leave to amend a complaint when the amendment introduces a new claim or factual allegation at a point in the litigation where the nonmoving party would be unable to fully respond to the new information without additional time, discovery, or other preparation"); *see also Roberts v. Ariz. Bd. Of Regents*, 661 F.2d 796, 798 (9th Cir. 1981) (finding that it was not an abuse of the district court's discretion for it to permit plaintiff to add a new claim "raised at the eleventh hour").  This line of cases applies particularly when there is a pending dispositive motion.  *See, e.g., M/V Am*. *Queen*, 708 F.2d at 1492 ("a motion for summary judgment was pending and possible disposition of the case would be unduly delayed by granting the motion for leave to amend"); *see also Chau Van v. City of Oakland*, No. 13-CV-00992-JCS, 2015 WL 995127, at *15 (N.D. Cal. Mar. 4, 2015) ("**Although a trial date has not yet been set, Defendants have already filed their summary judgment motion** which will, if granted, dispose of virtually the entire case.") (emphasis added).

Here, Plaintiff brings this Motion to include a new invasion of privacy claim steeped in an entirely separate nucleus of facts after the parties engaged in months of Court-ordered discovery limited to Plaintiff's individual DSCA claims and his personal matchmaking experience.  Rather than diligently pursuing a timely amendment, Plaintiff instead made a conscious tactical decision to introduce this issue and proposed amendment during a time in which Tawkify is no longer able to engage in meaningful discovery in light of the Court's well-reasoned limit on Plaintiff-specific

discovery before the MSJ is fully briefed.  The Northern District has denied similar motions to this effect.  *See e.g., Trans Video Electronics, Ltd. v. Sony Electronics, Inc.*, 278 FRD 505 (N.D. Cal. 2011) (finding that the plaintiff's decision to not include the claim was a "conscious tactical decision" and that "undue delay combine with bad faith is enough to justify a denial of a motion to amend. Here, the Court agrees with Sony that the motion to amend was taken in bad faith, more specifically, as a last-ditch attempt to avoid the case being dismissed in its entirety").  This Court has noted that it "think[s] there is a 50/50 chance this case will get thrown out on summary judgment." (Graham Decl., Ex. A, March Hearing Transcript at 46:10-11.)  Plaintiff's bad faith and tactical gamesmanship are readily apparent.

In addition, one consequence to not giving notice before a call being recorded is that the recording in not admissible in a legal proceeding. California Penal Code § 632(d).  Here, as Plaintiff and his counsel now know well—in light of Plaintiff's sworn deposition testimony—there are impeachable facts that further highlight Plaintiff's lack of standing and lack of candor with Tawkify and this Court.  For example,

Plaintiff clearly was trying to paint himself in a more positive light to induce Tawkify to accept him as a client and make him appear more attractive to potential dates.  But his description of himself in this regard was false.  He also made other now-demonstrably false statements to Tawkify that tainted Tawkify's perception of him and its ability to match him with suitable candidates based on an incomplete picture of who Plaintiff Stanfield really is.[3]  In a sense, Plaintiff's deception hoodwinked Tawkify into accepting him as a client (as Tawkify does **not** accept/approve every prospective client as an ultimate client—*See* Graham Decl., Ex. H, Deposition of Thane Schultz at 14:9-10, 192:4-22), which ultimately led to a fractured relationship that led to this lawsuit and the expenditure of substantial resources to defend against it.  If Plaintiff's incomplete and inaccurate allegations about a purported lack of notice about the recorded call from Tawkify were to prevail—especially when notice was in

---

[3] Other impeachable facts are more appropriately addressed in the context of Tawkify's MSJ.

fact given—Tawkify would be further prejudiced in not being able to fully defend itself against Plaintiff's deficient and contradictory claims.

Therefore, radically shifting this case in the eleventh hour to include claims under the CIPA that are based on entirely distinct and different, albeit meritless, "facts" and inapplicable law is unfairly and substantially prejudicial to Tawkify and another sufficient basis for denying the Motion.

## V.   <u>CONCLUSION</u>

For the foregoing reasons, Tawkify respectfully requests the Court deny Plaintiff's Motion.


Dated:  June 29, 2021                   Respectfully submitted,

                                        NELSON MULLINS RILEY & SCARBOROUGH LLP


                                        By:     */s/ Jahmy S. Graham*_____
                                                Jahmy S. Graham
                                                Priscilla Szeto
                                                Crispin L. Collins

                                                Attorneys for Defendant
                                                TAWKIFY, INC.

1

**<u>CERTIFICATE OF SERVICE</u>**

2

    I hereby certify that on , I electronically filed the forgoing with the Clerk of court using the

3

CM/ECF system and I served a copy of the forgoing pleading on all counsel for all parties via the

4

CM/ECF system and/or mailing same by United States Mail, properly addressed, and first class

5

postage prepaid, to all counsel of record in this matter.

6

7

    I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

8

    Executed  at Torrance, California.

9

Jahmy S. Graham                By:   _/s/ Jahmy S. Graham_

10

       Jahmy S. Graham                             Signature

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CERTIFICATE OF SERVICE