Christian Schreiber (Bar No. 245597)
christian@osclegal.com
Monique Olivier (Bar No. 190385)
monique@osclegal.com
Hannah Shirey (Bar No. 332187)
hannah@osclegal.com
OLIVIER SCHREIBER & CHAO LLP
201 Filbert Street, Suite 201
San Francisco, California 94133
Tel: (415) 484-0980
Fax: (415) 658-7758

Elliot Conn (Bar No. 279920)
elliot@connlawpc.com
CONN LAW, PC
354 Pine Street, 5th Floor
San Francisco, California 94104
Tel: (415) 417-2780
Fax: (415) 358-4941

*Attorneys for Plaintiff Jeremy Stanfield
and the Proposed Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| JEREMY STANFIELD, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>TAWKIFY, INC.,<br><br>Defendants. | **Case No. 3:20-cv-07000-WHA**<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT TAWKIFY, INC.'S MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS**<br><br>Date:  December 2, 2021<br>Time:  8:00 a.m.<br>Courtroom:  12<br>Judge:  Hon. William H. Alsup |

1

# **TABLE OF CONTENTS**

2    I.    INTRODUCTION.................................................................................................1

3    II.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND...........................2

4         A.   Timeline of Relevant Events .................................................................2

5         B.   The Court's Summary Judgment Order .................................................5

6    III.  ARGUMENT .....................................................................................................6

7         A.   The Court Should Deny Tawkify's Motion. ..........................................6

8              1. Tawkify Achieved Merely Mixed Results...........................................7

9              2. Plaintiff's Lawsuit Caused Tawkify to Change Its Policies And Fully
10                Refund Him. ..................................................................................8

11        B.   Awarding Attorneys' Fees Against Plaintiff Would Be Unjust and Contravene the
              Pro-Consumer Intent of the DSCA and the Goals of Class Action............................13

12        C.   Tawkify Requests Fees for Unsuccessful and Unnecessary Motions. ......................16

13             1. Tawkify's Removal..............................................................................16

14             2. Tawkify's Motion to Compel Arbitration..............................................17

15             3. Tawkify's Unsuccessful Motion to Stay................................................17

16             4. Tawkify's Abandoned Appeal of the Order Denying Arbitration ...............17

17             5. Tawkify's Motion to Dismiss. ..............................................................17

18             6. Tawkify's Current Motion ...................................................................18

19        D.   Tawkify's Fees Are Unreasonable. ........................................................18

20        E.   Tawkify's Request for Costs Is Untimely, Improper, and Unjustified. ......................21

21             1. Tawkify Has Waived Costs. ..................................................................21

22             2. Tawkify's Requested Costs are Unreasonable..........................................21

23             3. An Award Of Costs Against Plaintiff Would Undermine Public Policy Goals. ....23

24             4. An Award Of Costs Would Be Unjust....................................................24

25        F.   An Award of Fees or Costs Would Be Unjust and Financially Ruinous
              for Plaintiff. ...................................................................................25

26

27   IV.   CONCLUSION .................................................................................................25

28

1

## TABLE OF AUTHORITIES

2

**Cases** **Page(s)**

3

*Adelman v. Spark Networks Ltd.*,
  2008 WL 2108667 (Cal. Ct. App. May 20, 2008) ........................................................ 19

4

*Ass'n of Mexican–Am. Educators v. California*,
5
  231 F.3d 572 (9th Cir. 2000) ................................................................................ 23, 24

6

*Brown v. Stackler*,
7
  612 F.2d 1057 (7th Cir. 1980) ...................................................................................... 20

8

*Californians for Responsible Toxics Mgmt. v. Kizer*,
  211 Cal. App. 3d 961 (1989) ..................................................................................... 9, 10
9

10

*Chapman v. First Index, Inc.*,
  796 F.3d 783 (7th Cir. 2015) ........................................................................................ 16

11

*Chase Inv. Servs. Corp. v. L. Offs. of Jon Divens & Assocs., LLC*,
12
  2010 WL 11597568 (C.D. Cal. June 10, 2010) ............................................................ 20

13

*Chen v. Allstate Ins. Co.*,
14
  819 F.3d 1136 (9th Cir. 2016) ...................................................................................... 11

15

*Christiansburg Garment Co. v. Equal Emp. Opportunity Comm'n*,
  434 U.S 412 (1978) ................................................................................................. 13, 14
16

17

*City of Alameda v. Nuveen Mun. High Income Opportunity Fund*,
  2012 WL 177566 (N.D. Cal. Jan. 23, 2012) ................................................................. 22

18

*Common Cause v. Stirling*,
19
  119 Cal. App. 3d 658 (1981) ........................................................................................ 25

20

*CoreCivic Inc. v. Candide Group LLC*,
21
  2021 WL 1267259 (N.D. Cal. Apr. 6, 2021) ..................................................... 19, 20, 24

22

*Cummings v. Benco Bldg. Servs.*,
  11 Cal. App. 4th 1383 (1992) ....................................................................................... 14
23

24

*Ebbetts Pass Forest Watch*,
  187 Cal. App. 4th 376 (2010) ....................................................................................... 10

25

*Fair Housing Council of Greater Washington v. Landow*,
26
  999 F.3d 92 (4th Cir. 1993) .......................................................................................... 20

27

*Goodman v. Lozano*,
  47 Cal. 4th 1327 (2010) ................................................................................................. 6
28

*Graciano v. Robinson Ford Sales, Inc.*,
   144 Cal. App. 4th 140 (2006) ................................................................................ 7

*Graham v. DaimlerChrysler Corp.*,
   34 Cal. 4th 553 (2004) ....................................................................................... 10

*Gutierrez v. Wells Fargo Bank, N.A.*,
   2010 WL 5025663 (N.D. Cal. Dec. 3, 2010) ....................................................... 22

*Harman v. City & Cty. of San Francisco*,
   136 Cal. App. 4th 1279 (2006) ........................................................................... 19

*Henderson v. J.M. Smucker Co.*,
   2013 WL 3146774 (C.D. Cal. June 19, 2013) .................................................. 9, 14

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ........................................................................................... 18

*Hogar v. Cmty. Dev. Com. of City of Escondido*,
   157 Cal. App. 4th 1358 (2007) ............................................................................. 9

*Howell v. Grindr*,
   2016 WL 1668243 (S.D. Cal. Apr. 27, 2016) ...................................................... 15

*In re Glob. Equity Mgmt. (SA) Pty. Ltd.*,
   2020 WL 4732210 (N.D. Cal. Aug. 15, 2020) ............................................... 20, 21

*In re Oracle Securities Litigation*,
   136 F.R.D. 639 (N.D. Cal. 1991) ........................................................................ 15

*Jankey v. Lee*,
   55 Cal. 4th 1038 (2012) .................................................................................. 6, 14

*Jones v. ConAgra Foods, Inc.*,
   2013 WL 6623740 (N.D. Cal. Dec. 16, 2013) .................................................. 7, 12

*Kagan v. Gibraltar Sav. & Loan Assn.*,
   35 Cal .3d 582 (1984) ......................................................................................... 12

*Kim v. Euromotors West/The Auto Gallery*,
   149 Cal. App. 4th 170 (2007) ............................................................................... 7

*Ladas v. California State Auto. Assn.*,
   19 Cal. App. 4th 761 (1993) ............................................................................... 22

*MacDonald v. Ford Motor Co.*,
   142 F. Supp. 3d 884 (N.D. Cal. 2015) ...................................................... 9, 10, 14

*MacDonald v. Ford Motor Co.*,
  2016 WL 3055643 (N.D. Cal. May 31, 2016)...................................................................21

*Meyer v. Sprint Spectrum L.P.*,
  45 Cal. 4th 634 (2009) ......................................................................................................12

*Moore v. Hughes Helicopters, Inc.*,
  708 F.2d 475 (9th Cir. 1983) ............................................................................................24

*National Org. for Women v. Bank of Cal.*,
  680 F.2d 1291 (9th Cir. 1982) ..........................................................................................24

*Patel v. Mercedes-Benz USA, LLC*,
  43 Cal. App. 5th 1007 (2019) ...........................................................................................14

*Pitts v. Terrible Herbst, Inc.*,
  653 F.3d 1081 (9th Cir. 2011) ..........................................................................................11

*Rand v. Monsanto Co.*,
  926 F.2d 596 (7th Cir. 1991) ............................................................................................15

*Roberts v. Comm'r of Soc. Sec.*,
  522 F. App'x 387 (9th Cir. 2013) ......................................................................................18

*Rosenman v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro*,
  91 Cal. App. 4th 859 (2001) ........................................................................................14, 15

*Stanley v. Univ. of S. Cal.*,
  178 F.3d 1069 (9th Cir. 1999) ..........................................................................................24

*Teichner v. Klassman*,
  240 Cal. App. 2d 514 (1996) ............................................................................................22

*Thon v. Thompson*,
  29 Cal. App. 4th 1546 (1994) ...........................................................................................22

*U.S. Parole Comm'n v. Geraghty*,
  445 U.S. 388 (1980) ..........................................................................................................11

*Van de Kamp v. Bank of Am.*,
  204 Cal. App. 3d 819 (1988) ............................................................................................16

*Works v. Cty. of Los Angeles*,
  2018 WL 11309910 (C.D. Cal. Apr. 5, 2018) .....................................................................9

*Wrighten v. Metropolitan Hosps., Inc.*,
  726 F.2d 1346 (9th Cir. 1984) ..........................................................................................24

*Wuest v. My Pillow, Inc.*,
   2019 WL 3577176 (N.D. Cal. Aug. 6, 2019) .................................................................. 11

*Wynn v. Chanos*,
   2015 WL 3832561 (N.D. Cal. June 19, 2015).................................................................. 20

**Statutes**

28 U.S.C. § 1332(d) .................................................................................................................. 16

Cal. Bus. & Prof. C. § 17200 ..................................................................................................... 4

Cal. Civ. C. § 1694.................................................................................................................... 1

Cal. Civ. C. § 1694.4(c) ...................................................................................................... 6, 18

Cal. Civ. C. § 1750.................................................................................................................... 4

Cal. Civ. C. § 54960.5 ............................................................................................................. 25

Cal. Civ. Proc. § 1032(a)(4) ...................................................................................................... 7

Cal. Civ. Proc. § 1033.5(c) ...................................................................................................... 22

**Rules**

Fed. R. Civ. Proc. 3.............................................................................................................. 9, 12

Fed. R. Civ. Proc. 12(b)(6) .................................................................................................. 5, 17

Fed. R. Civ. Proc. 30(b)(6) ........................................................................................................ 5

Fed. R. Civ. Proc. 54 ............................................................................................................... 21

Fed. R. Civ. Proc. 54(d) .......................................................................................................... 24

Fed. R. Civ. Proc. 54(d)(1) ................................................................................................ 21, 23

Fed. R. Civ. Proc. 56.................................................................................................................. 5

Fed. R. Civ. Proc. 68............................................................................................................... 11

**Other Authorities**

Civ. L. R. 54............................................................................................................................ 21

## I.    **INTRODUCTION**

Defendant Tawkify, Inc.'s ("Tawkify") Motion for Attorneys' Fees and Costs ("Motion"), seeking nearly $800,000 for a case that was litigated for 12 months, must be denied in its entirety as unwarranted, unreasonable, unjust, and contrary to public policy.

First, the Court has the discretion to deny fees and costs, and should here. Plaintiff brought proposed class claims under the Dating Service Contracts Act ("DSCA"), Cal. Civ. C. § 1694, *et seq.*, the flagship consumer protection law that applies to Tawkify and its customers. Plaintiff's claims arose out of Tawkify's blatant failure to include contractual disclosures required under California law and its refusal to refund Plaintiff's money after he lawfully cancelled his contract. This litigation proved as much. The Court ruled that Tawkify's contracts did *not* comply with California law, its "refund policy" was void, and its forced arbitration clause was unenforceable. The Court also ruled that Tawkify failed to refund Plaintiff the amount of money he was owed at the time Plaintiff filed the lawsuit – more than $600. While the Court granted Tawkify's Motion for Summary Judgment, it did so on the basis that Tawkify had provided relief to Plaintiff after the case was filed – not because Tawkify's conduct was entirely lawful. To the extent Tawkify "prevailed" here, it did so merely in form, not in substance. Rather, because of this suit, Tawkify has changed its business practices to comply with the DSCA and refunded Plaintiff in full.

Second, an award of fees is unwarranted because it would undermine the public policy underlying the consumer protection purposes of the DSCA. The punitive outcome sought by Tawkify would chill efforts to hold companies accountable for unlawful behavior, and is contrary the remedial purpose of California's consumer protection statutes.

Third, Tawkify's attorneys' fees are patently unreasonable. Plaintiff should not be held responsible for an unjustifiable number of hours spent on wasteful and unnecessary work. Tawkify's costs are also unjustifiable, improperly sought, and untimely.[1] Similarly, Tawkify's request for costs is untimely, improper, and a gross overreach for unrecoverable and wasteful

---

[1] Tawkify seeks an award for more than 4 times the amount of hours that Plaintiff's counsel has billed in this case (1,889 hours compared to 419 hours). Conn Decl. ¶ 6; Schreiber Decl. ¶¶ 8-9.

1   conduct that Plaintiff should not bear.[2]

2       Fourth, the outcome sought by Tawkify would be manifestly unjust. Tawkify seeks to

3   create a ruinous financial hardship on Plaintiff that would undermine the purposes of the DSCA

4   and deter future litigation to protect consumer's rights. Plaintiff did not litigate any part of this

5   case unreasonably, but only in a manner consistent with the Court's expectations and in response

6   to Tawkify's litigation tactics. Plaintiff should not be punished for seeking to enforce his

7   consumer rights or for Tawkify's wasteful conduct in defending this suit.

8       Tawkify's Motion is improper and unreasonable and should be denied in its entirety.

9   **II.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

10      The facts in this case have been extensively briefed. *See, e.g.*, ECF 106. Plaintiff refers to

11  the findings set forth in the Court's Order granting Tawkify's summary judgment motion and

12  dismissing Plaintiff's claims ("Order"). Dkt 114. Plaintiff addresses only those facts below that

13  are most relevant to the Court's consideration of this Motion.

14      **A.  Timeline of Relevant Events**

15      Plaintiff bought a package of six dates on June 29, 2020 for $3,700 and assented to a

16  "Client Agreement." Order at 2:1-7. Plaintiff went on two highly unsuccessful dates on July 11

17  and 14. *Id.* at 2:11-12. After each date, Plaintiff expressed his extreme dissatisfaction with

18  Tawkify's service. Dkt. 96-2, ¶ 8. After the second date, Plaintiff requested a refund of his entire

19  $3,700 payment. *Id*. ¶¶ 9-13.

20      Tawkify acknowledged, at least as early as July 14, 2020, that Plaintiff had requested to

21  cancel his contract.[3] The Court's Order states that Plaintiff texted Tawkify on July 17, 2020

22  requesting "a full refund processed today" (Order at 2:20-22) but held that "the effective date of

23  Stanfield's cancellation was when he emailed Tawkify on July 21." *Id.* at 12:21-22.

24      Tawkify has conceded, and the Court has held, that Plaintiff's contract failed to include

25

---

26  [2] Tawkify asks for $27,418.02, nearly three times the costs incurred by Plaintiff's counsel ($10,115).

27  [3] That day, Plaintiff received an email from Lacy "from the Tawkify Customer Success Team"

28  stating, "*I am so sorry to hear that you would like to cancel* your experience and I am here to support you." ECF Dkt. 96-2 (Stanfield Decl. Ex. F) (emphasis added).

1   statutorily required disclosures. Dkt. 106-1, Declaration of Elliot Conn In Support of Plaintiff's

2   Opposition to Motion for Summary Judgment ("Conn MSJ Decl."), Ex. C at 17; Order at 6:7-15.

3   Tawkify also agrees that its failure to follow the DSCA entitled Plaintiff to a refund. Dkt. 107 at

4   20:20-22.

5        On July 19, Tawkify told Plaintiff: "I would love the opportunity to bonus your account

6   back for the 2 matches you went on and start fresh." *See* Dkt. 106-1 Ex. N at 1. Tawkify later

7   rescinded this offer when Plaintiff reiterated his request for a full refund. *Id*. at 17.

8        On August 1, Tawkify processed a refund of half of Plaintiff's money and kept the value

9   of *three* of the six matches[4] (and even though Plaintiff Tawkify said it would "bonus back" his

10   account and start fresh"). Tawkify refunded Plaintiff $1,850, which was equal to only half of his

11   purchase. Order at 3:9-10. The Court has found that this refund was inadequate. Order at 10:15-

12   17 ("Tawkify owed Stanfield only a prorated refund for services not yet received when Stanfield

13   cancelled, namely, for four dates.").

14        This decision to retain monies owed to Plaintiff was deliberate. As early as July 24,

15   Tawkify's internal communications on Plaintiff's account showed that Tawkify was not going to

16   provide Plaintiff a full refund. An internal note from Tawkify states, "I'm not breaking policy for

17   a bully. he's gonna [sic] be refunded per the agreement and in the time we want." Dkt. 106-1, Ex.

18   N at 14. Three days later, Tawkify added to Plaintiff's file that "let's be prepared he is going to

19   loose [sic] it when he see we kept two matches. We need to be ready to explain policy." *Id.*

20        On August 1, Plaintiff complained that he was refunded only half his money. *Id*. at 14-15.

21   On August 7, 2020, a Tawkify agent re-confirmed to Plaintiff that Tawkify would not refund any

22   more money and that the partial refund was consistent with Tawkify's policy: "Hi Jeremy,

23   Thanks for making us aware of your intentions. I will need to echo what Cameron has previously

24   told you. Our refund policy isn't negotiable…." *Id*. at 17. Tawkify then internally noted that it

25   was "going to close until we receive a notification from his legal dept." *Id*. at 18.

26

27       [4] According to the deposition testimony of Tawkify corporate representative Thane
Schultz, the value of one date within a package "would be the value of the total cost divided by

28   the - - by the number of dates." Dkt. 106-1 (Conn MSJ Decl. Ex. B (Schultz Dep. at 58:17-59:16;
59:17-63:23)).

1    The Court held that "Tawkify's contract was also voidable under the DSCA for its lack of

2    statutorily required provisions, so Tawkify's refund policies are not binding." Order at 12:2-3.

3    Though Plaintiff mentioned speaking to a lawyer in his communications with Tawkify, he

4    did not, in fact, seek counsel until after Tawkify reconfirmed its position on August 7, 2020 that it

5    would not refund any more money. Declaration of Elliot Conn ("Conn Decl.") ¶ 2. Plaintiff

6    retained counsel on August 12, 2021. *Id.*

7    As Tawkify had made clear that no more refund was coming, Plaintiff filed this action in

8    San Francisco County Superior Court five days later, on August 17, 2020. Dkt. 1-1. His

9    complaint alleged violations of the DSCA, the Unfair Competition Law ("UCL"), Cal. Bus. &

10   Prof. C. § 17200, *et seq.*, and the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. C. § 1750.

11   Plaintiff first attempted service of the complaint and the CLRA notice on Tawkify

12   corporate address on August 21, 2021. Declaration of Christian Schreiber ("Schreiber Decl.") ¶ 4.

13   Service could not be effectuated because the address that Defendant's agent (company founder

14   Kenneth Shaw) had listed as the address for service appeared to be abandoned. *Id.*, Ex. C

15   ("Security stated that company no longer there. Suite is empty."). Multiple subsequent

16   (unsuccessful) attempts were made to serve the company and Mr. Shaw at what Plaintiff

17   understood to be his personal residence address. *Id.*

18   The billing records that Tawkify's counsel has provided show it had been retained by

19   Tawkify to defend it in this matter in August 2020. ECF Dkt. 118-01 (Graham Decl. ¶ 12; Ex. 4

20   at 25). Because Tawkify's counsel has fully redacted its first billing entries (including the dates),

21   the date of counsel's initial billing record is undisclosed, but the unredacted entries show Tawkify

22   was aware of the lawsuit and had retained counsel <u>prior</u> to being served with the complaint.[5]

23   As such, by August 28, 2020, Tawkify's counsel had already been working on this action,

---

[5] The declaration filed by Tawkify's counsel states that he has "been representing Tawkify since in or around late summer of 2020 and I am among a handful of attorneys who have worked on multiple actions for Tawkify . . ." ECF Dkt. 118-1 (Graham Decl. ¶ 12).

Counsel's declaration redacts the first billing records from August 2020. The records disclose an entry on August 28, 2020. *Id.* Ex. 4 at 25. After Plaintiff's attempts to meet and confer about this redaction, Defendant stated that the redaction was "explained in Paragraph 9 of the Graham Declaration." The only potentially relevant portion of that paragraph suggests that Defendant did not include its first time entries because "in order to reduce some of the recoverable fees, we have not included their fees as part of this motion."

1   showing that they were aware of the lawsuit before being served. ECF 118-01 (Graham Decl. ¶

2   12, Ex. 4).

3        On August 26, 2020, Tawkify refunded the remaining $1850 to Plaintiff. The refund was

4   notated with the designation "Nonstandard Alexis Rico – additional refund, legal." *See* ECF 50-1

5   (Schultz Decl. Ex. C).

6        On August 31, 2020, counsel for Tawkify emailed Plaintiff's counsel. Schreiber Decl. ¶ 5,

7   Ex. D. On September 3, 2020, Plaintiff's counsel asked Tawkify's counsel if it would accept

8   service on behalf of Defendant, as five attempts at service had been made. Schreiber Decl. ¶ 6,

9   Exs. E-F. On September 8, 2020, Defendant's counsel agreed to accept service and Plaintiff

10  agreed to a 14-day extension for a responsive pleading. *Id.*

11       Tawkify thereafter removed the case to this Court on October 7, 2020. ECF Dkt. 1.

12       Defendant moved to compel Plaintiff's claim to arbitration, and the Court denied its

13  motion on February 3, 2021. ECF Dkt. 46. Thereafter, Tawkify moved to dismiss the action

14  pursuant to Fed. R. Civ. Proc. 12(b)(6), which the Court converted to a motion for summary

15  judgment of Plaintiff's individual claims pursuant to Fed. R. Civ. Proc. 56. ECF Dkt. 62.

16       Plaintiff was deposed on May 26, 2021. Thane Schultz, Tawkify's corporate designee,

17  produced pursuant to Fed. R. Civ. Proc. 30(b)(6), was deposed on June 23, 2021.

18       **B.  The Court's Summary Judgment Order**

19       The Court granted Tawkify's summary judgment motion on September 15, 2021. The

20  Order turned on the Court's interpretation of the cancellation and refund provisions of the DSCA.

21  As framed by the Court, Plaintiff's claims turned on the interpretation of two issues raised by the

22  DSCA. First, whether Plaintiff was entitled to a refund, and if so, whether he was entitled to a full

23  refund or a prorated refund. Second, whether the DSCA required Tawkify to provide the refund

24  within 10 days.

25       As to the first point, the Court found that Tawkify's contract lacked the statutorily-

26  required disclosures, which entitled Plaintiff to a prorated refund. Order at 11-12. The Court also

27  found that Tawkify's August 1, 2020 refund of $1,850 to Plaintiff was insufficient: "This order

28  holds that the statutory interpretation and caselaw indicate that Tawkify owed Stanfield only a

1   prorated refund for services not yet received when Stanfield cancelled, namely, for four dates."

2   Order at 10, 12 ("Thus, this order finds that Stanfield was owed the value of the four dates or

3   $2467.").

4          The Court also concluded: "Thus, upon Stanfield's cancellation, Tawkify owed Stanfield a

5   prorated share of the $3700 that Stanfield paid for services he had not yet received, four of the six

6   dates, and this should have been paid promptly within a reasonable period of time." Order at 11.

7          As to the second issue, the Court concluded that when Tawkify refunded the remaining

8   $1,850 to Plaintiff's credit card, it did so within 40 days of Plaintiff's July 17 demand (or 36 days

9   from his July 21 email) for a full refund. Order at 12. The Court found that the timing of the

10  refund satisfied Tawkify's obligation under the DSCA to provide "an adequate, prorated refund

11  within a prompt, reasonable period of time." Order at 11.

12         Though the Court converted Tawkify's Motion to Dismiss into a summary judgment

13  motion (Dkt. 62), the Order states that Plaintiff's "DSCA violation claim is dismissed." Order at

14  13. The Court also dismissed Plaintiff's UCL and CLRA claims. The day after issuing its Order,

15  the Court entered final judgment. Dkt. 115.

16  **III.   ARGUMENT**

17      **A.  The Court Should Deny Tawkify's Motion.**

18         The Court should exercise its discretion to deny Tawkify's Motion. Tawkify is not entitled

19  to attorneys' fees as a matter of right under the DSCA. Instead, the applicable fees provision

20  merely provides that "[r]easonable attorney fees *may* be awarded to the prevailing party." Cal.

21  Civ. C. § 1694.4(c) (emphasis added). The California Supreme Court has explained that the

22  California Legislature uses the term "'may' in circumstances where it intends a fee award to be

23  discretionary." *Jankey v. Lee*, 55 Cal. 4th 1038, 1046 (2012). Based on the language of the

24  DSCA, the Court has discretion to deny the fee Motion entirely.

25         Furthermore, Tawkify has not established that it is the prevailing party. "[T]he

26  determination that a defendant is a prevailing party is generally discretionary." *Jankey*, 55 Cal.

27  4th at 1046 (citing *Goodman v. Lozano*, 47 Cal. 4th 1327, 1332 (2010)). Where, as here, the

28  applicable fee provision does not define "prevailing party," the courts use a pragmatic approach

1    to assess the parties' success on a practical level. *See Jones v. ConAgra Foods, Inc.*, No. C 12-

2    01633 CRB, 2013 WL 6623740, at *2 (N.D. Cal. Dec. 16, 2013); *see also Graciano v. Robinson*

3    *Ford Sales, Inc.*, 144 Cal. App. 4th 140, 150 (2006); *Kim v. Euromotors West/The Auto Gallery*,

4    149 Cal. App. 4th 170, 179 (2007). A key consideration is whether each party achieved its

5    litigation goals. *Id*.[6] The factors for determining prevailing party (*e.g.*, party with the net

6    monetary recovery and the party who obtained relief) weigh in favor of Plaintiff, and thus

7    Tawkify's Motion should be denied.

8           **1.    Tawkify Achieved Merely Mixed Results.**

9           Plaintiff achieved much of what he sought in this litigation and catalyzed systematic

10   change at the company, while many of Tawkify's litigation efforts were unsuccessful. For

11   example, Tawkify unsuccessfully moved to compel arbitration based on an arbitration provision

12   that the Court found was both procedurally and substantively unconscionable. ECF Dkt. 46. The

13   question was not a close one. As to the procedural unconscionability of the provision, the Court

14   held, "The arbitration provision was a needle in a haystack, with the word arbitration appearing

15   only twice in the ten-page document and referenced in a single sentence only, never

16   bolded….The section lay on the very last of nine information-overloaded pages." *Id.* at 5-6. The

17   Court also found that the arbitration provision was substantively unconscionable because of a lack

18   of mutuality and a lack of detail that created a "heavy burden of uncertainty and expense

19   effectively eviscerated any remedy to the ordinary consumer user." *Id.* at 6.

20          After Tawkify's unsuccessful motion, it appealed the Order and moved the Court to stay

21   this action. The Court denied the Motion and noted that "the applicant has not made a strong

22   showing that it is likely to succeed on the merits on appeal and the applicant has not made a

23   showing it will be irreparably injured absent a stay." ECF Dkt. 62. Tawkify has since abandoned

---

[6] *See also* Cal. Civ. Proc. § 1032(a)(4) ("'Prevailing party' includes the party with a net monetary recovery, a defendant in whose favor a dismissal is entered, a defendant where neither plaintiff nor defendant obtains any relief, and a defendant as against those plaintiffs who do not recover any relief against that defendant. If any party recovers other than monetary relief and in situations other than as specified, the 'prevailing party' shall be as determined by the court, and under those circumstances, the court, in its discretion, may allow costs or not and, if allowed, may apportion costs between the parties on the same or adverse sides pursuant to rules adopted under Section 1034.").

1  its appeal. *See* Mot. to Voluntarily Dismiss Appeal, *Stanfield v. Tawkify, Inc.*, Case No. 21-15399

2  (9th Cir. Oct. 12. 2021), ECF Dkt. 23.[7]

3       Additionally, the Court's Order vindicated much of Plaintiff's complaint by holding that

4  Tawkify's Client Agreement violated the DSCA, that its arbitration provision was

5  unconscionable, that its refund policy was void and unenforceable, that Plaintiff was entitled to

6  cancel his contract, and that, at the time the complaint was filed, Plaintiff was entitled to an

7  additional refund.

8           **2.  Plaintiff's Lawsuit Caused Tawkify to Change Its Policies And Fully
                 Refund Him.**

9

10      Though the Court granted Tawkify's motion for summary judgment and rejected

11  Plaintiff's arguments regarding the refund-timing requirements of the DSCA, the Court

12  nevertheless affirmed that Plaintiff was entitled to relief at the time he filed his complaint and that

13  Tawkify's contract violated the requirements of the DSCA.

14      Plaintiff achieved one of his litigation objectives of receiving a full refund only *after* he

15  filed his lawsuit, which successfully <u>reversed</u> Tawkify's repeated refusal to refund him. The

16  undisputed facts set forth above demonstrate that Plaintiff's lawsuit was responsible for Tawkify

17  "coming into compliance" with the DSCA (as to Plaintiff's claims) after Plaintiff filed (and likely

18  after it retained defense counsel), and after numerous, unequivocal statements indicating its

19  violative intent.

20      The timeline of events shows that Plaintiff's lawsuit was responsible for ensuring

21  Plaintiff received a full refund. First, even before Plaintiff consulted with an attorney, Tawkify

22  repeatedly told Plaintiff that it would only refund half of the money he paid ($1,850) and that no

23  additional refund would be forthcoming. Dkt. 106-1, Ex. N at 14-18. The Court concluded that

24  one-half refund was insufficient, and that Plaintiff was, instead, entitled to a refund of an

25  additional $617 and a total of $2,467. Order at 12:3-4. Second, Defendant's internal designation

26  of Plaintiff's refund as "non-standard – legal" identifies the basis for the refund was for legal

27  ─────────────
   [7] On October 12, 2021, Tawkify counsel informed Plaintiff's counsel that it would not seek fees

28  related to its abandoned appeal but, inexplicably, would still seek fees and costs related to the
   underlying motion. Schreiber Decl. Ex. G.

reasons. Third, Tawkify's counsel identified themselves as counsel in this matter on August 31 – *after* they began working on the case and *after* Plaintiff had made multiple attempts at service of Defendant's agent (which was not available to be served). The facts thus demonstrate that the refund was made in an attempt to "pick off" Plaintiff as a class representative by providing him a full refund. This conclusion is bolstered by the fact that Defendant became aware of the case – and engaged counsel – before service was made. The facts and timeline thus strongly suggest that Plaintiff's complaint was directly responsible for the refund he achieved.

Regardless, it is undisputed that Plaintiff received a net monetary recovery after the commencement of the litigation. *See* Fed. R. Civ. Proc. 3; *see also* Cal. C. Civ. Proc. § 411.10 ("A civil action is commenced by filing a complaint with the court.").

Plaintiff's lawsuit was also the catalyst for company-wide policy changes to Tawkify's business practices: Tawkify's arbitration clause has been amended and the company changed its policies to include the cancellation and other disclosures required under the DSCA. *See* Request For Judicial Notice ("RJN"), Exs. B-C.

Judge Tigar explained the catalyst theory of fee recovery in *MacDonald v. Ford Motor Co.*, 142 F. Supp. 3d 884 (N.D. Cal. 2015): "To be a catalyst, the lawsuit must have been 'a substantial causal factor' contributing to Defendant's conduct, though the lawsuit need not be the only cause of Defendant's conduct." *Id.* at 891 (citing *Henderson v. J.M. Smucker Co.*, 2013 WL 3146774, at *4 (C.D. Cal. June 19, 2013)).[8] Under California law,[9] "If plaintiff's lawsuit 'induced' defendant's response or was a 'material factor' or 'contributed in a significant way' to the result achieved then the plaintiff has shown the necessary causal connection." *Californians for Responsible Toxics Mgmt. v. Kizer*, 211 Cal. App. 3d 961, 967 (1989). "[T]he chronology of events may raise an inference that the litigation was the catalyst for the relief." *Hogar v. Cmty.*

---

[8] While it is customary to consider a catalyst theory in the context of the party seeking fees, the concepts are illustrative in showing that Plaintiff's success in achieving changes in Tawkify's business practices would typically be sufficient to justify an award for Plaintiff. Here, the same analysis undermines Tawkify's claim to fees.

[9] Federal courts apply the catalyst theory to state law causes of action. *See Works v. Cty. of Los Angeles*, No. CV 15-8982-GW(RAOX), 2018 WL 11309910, at *4 (C.D. Cal. Apr. 5, 2018) ("[T]he catalyst theory for recovery of attorneys' fees remains viable for California state law causes of action."); *see also MacDonald*, 142 F. Supp. 3d at 890-91.

1    *Dev. Com. of City of Escondido*, 157 Cal. App. 4th 1358, 1366 (2007). Once the inference has

2    been raised, defendants can present evidence to rebut it. *See Kizer*, 211 Cal. App. 3d at 968.

3          These facts demonstrate that, in spite of the Court's Order, Plaintiff largely succeeded.

4    *MacDonald*, 142 F. Supp. 3d at 891 ("Plaintiffs may be considered successful if they succeed on

5    any significant issue in the litigation that achieves some of the benefit they sought in bringing

6    suit.") (citing *Ebbetts Pass Forest Watch*, 187 Cal. App. 4th 376, 382 (2010)). Significantly here,

7    the relief sought may be obtained from "a voluntary change in the defendant's conduct."

8    *Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 567 (2004). Tawkify refused to change its

9    policies in response to Plaintiff's CLRA demand letter. Schreiber Decl. ¶ 10, Ex. H.

10    Accordingly, Plaintiff commenced suit, after which Tawkify provided an additional refund to

11    him and changed its policies.

12          The Court's Order did not describe Plaintiff's claim as "moot" or not "ripe," but the

13    Court's conclusions leave no doubt that the dismissal was for "prudential" reasons. The

14    gravamen of the Court's Order is that Plaintiff sought judicial relief too soon because a "prompt,

15    reasonable period of time" had not elapsed when he filed his complaint on August 17, 2021. The

16    dispositive technicality of Plaintiff's lawsuit was thus his decision to "file his lawsuit very

17    quickly," Order at 12, which opened the door for Tawkify to "overpay" Plaintiff within the

18    "reasonable time" this Court found was required under the DSCA. *Id.*

19          But Plaintiff only sought counsel and brought this lawsuit after being repeatedly told that

20    no further refund was forthcoming. Given that Tawkify's counsel began work on this matter

21    before the complaint was served, Dkt. 118-01, and Plaintiff's money was refunded for "non-

22    standard – legal" reasons, *see* Dkt. 50-1, Ex. C, it is reasonable to conclude that Tawkify only

23    provided a refund after becoming aware of the lawsuit. Thus, the reason for Plaintiff's refund

24    was his filing of this lawsuit. The Court did not impute other reasons for Tawkify's decision to

25    refund Plaintiff's remaining money, and Tawkify has offered no alternative explanation.

26          By refunding Plaintiff for the remaining balance of his contract *after* he filed his

27    complaint, Tawkify acted to moot Plaintiff's claim – conduct that would be either improper or

28    unsuccessful in similar contexts. For example, California State Rule of Court 3.770(a) was

1   designed to ensure that plaintiffs do not leverage the threat of a class action to maximize their

2   individual gain (*i.e.*, to achieve monetary gain in exchange for mootness). In fact, Rule 3.770

3   (which would have applied had the case remained in its original forum) requires court approval

4   for the "dismissal of an entire class action, or of any party or cause of action in a class action."

5   *Id.* The Rule also requires that a party seeking a dismissal file a declaration that states "whether

6   consideration, direct or indirect, is being given for the dismissal and must describe the

7   consideration in detail." *Id.* This Court has noted in past cases that "[using] the threat of a class

8   action to extract a premium deal far in excess of the value of his individual case" is an "abuse" of

9   the class action device. *Wuest v. My Pillow, Inc.*, No. 18-03658 WHA, 2019 WL 3577176, at *4

10  (N.D. Cal. Aug. 6, 2019). It would have been improper for Plaintiff to have filed this class action

11  with the goal of achieving merely individual relief.[10] Tawkify's contention that Plaintiff

12  somehow unreasonably withheld consent to an *individual* settlement and prolonged this

13  litigation, Mot. at 1, 13, 19, is therefore not well taken.

14         Courts have also rejected formal efforts to moot the claims of putative class representative

15  plaintiffs. Had Tawkify offered a full refund in the context of an offer of judgment under Federal

16  Rule of Civil Procedure 68, it would have been unable to moot Plaintiff's claim as the putative

17  class representative. *See Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1091-92 (9th Cir. 2011)

18  ("Accordingly, we hold that an unaccepted Rule 68 offer of judgment—for the full amount of the

19  named plaintiff's individual claim and made before the named plaintiff files a motion for class

20  certification—does not moot a class action."). As the Ninth Circuit has explained, the practice of

21  "picking off" named plaintiffs would "deny a would-be class representative a fair opportunity to

22  seek class relief" and "obviously would frustrate the objectives of class actions." *Chen v. Allstate*

23  *Ins. Co.*, 819 F.3d 1136, 1147 (9th Cir. 2016) (citing *U.S. Parole Comm'n v. Geraghty*, 445 U.S.

24  388, 408 (1980)).

25         Plaintiff (and his counsel) were also mindful of the duty they owed absent class members

26  to investigate the claims in the case. The Court expressly instructed putative class counsel in this

27

28  ───────────────
    [10] Defendant's attempts to mischaracterize Plaintiff as having unreasonably declined to engage in
    individual settlement discussions brazenly ignores that this case was filed as a class action.

case to avoid premature settlement negotiations. *See* Supplemental Order, Dkt. 21 at 6 ("[A]s a general rule…plaintiff's counsel [should not] engage in any class settlement discussion until after class certification [and] only after adequate and reasonable investigation and discovery by class counsel."). Plaintiff's conduct was thus in keeping with his duty to investigate Tawkify's policies and procedures while complying with the Court's Order.

Here, Tawkify's strategy avoided such outcomes. First, because Plaintiff could not decline Tawkify's refund (which was executed by "charging back" money to his credit card), the Court concluded he was made whole. Order at 12. Second, because the Court converted Tawkify's motion to dismiss to an individual inquiry into the ripeness of Plaintiff's claims, the Court did not address Plaintiff's class claims for injunctive relief or the monetary claims sought for others under the CLRA. *See Kagan v. Gibraltar Sav. & Loan Assn.*, 35 Cal .3d 582, 506 (1984), *disapproved of on other grounds by Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 643 n.3 (2009).

In addition, the Court's Order focuses on the date of *service* of the Complaint, but the facts demonstrate that (1) at the time the Complaint was *filed*, Plaintiff was aggrieved because he was owed a refund that Tawkify had steadfastly and repeatedly refused to repay (Order at 12); and (2) Tawkify's own records demonstrate that it began to mount a legal defense *before* formal service of process. Dkt. 118-1 (Graham Decl. Ex. 4); *see* Fed. R. Civ. Proc. 3; *see also* Cal. C. Civ. Proc. § 411.10 ("A civil action is commenced by filing a complaint with the court.").[11]

While these points are not intended as an effort to relitigate the summary judgment motion or the Court's Order, they demonstrate that circumstances here do not justify an award of attorneys' fees against Plaintiff. Despite the Court's dismissal, most of Plaintiff's theories were vindicated by the Court's conclusions of law. *See Jones*, 2013 WL 6623740, at *2 (explaining court's "pragmatic approach" to assessing success on litigation objectives). For example, the Court held that Tawkify's contract failed to include disclosures mandated by the DSCA, which would have provided an independent basis for certain putative class members to have received full or partial refunds. The Court also concluded that the failure to include the DSCA's required disclosures made the contract voidable – and Tawkify's refund policy unenforceable. Order at

---

[11] These facts are also dispositive of Plaintiff's standing under Article III, the CLRA and UCL.

12. The Court also rejected as unconscionable Tawkify's arbitration clause. Dkt. 46.

Tawkify cannot be the "prevailing party" when the Court found that Plaintiff was owed a refund at the time the Complaint was served, and Tawkify's conduct in fact violated the law.

### B. Awarding Attorneys' Fees Against Plaintiff Would Be Unjust and Contravene the Pro-Consumer Intent of the DSCA and the Goals of Class Action.

The Court should exercise its discretion to decline any award of fees because an award of fees would contravene the purpose of the DSCA, undermine the goals of class actions, and have a chilling effect on individual consumers who seek to enforce consumer rights deemed important by the California Legislature.

The express purpose of the DSCA weighs against an award of fees. The DSCA is a remedial consumer protection statute, designed by the California Legislature, after finding that the dating services industry had historically been an area of scams and exploitation, to ensure that consumers were afforded certain rights and remedies when entering into dating service contracts. By enacting the DSCA, the Legislature intended to advance the rights of consumers and regulate the conduct of companies like Tawkify. Here, Plaintiff sought to vindicate his rights under the statute, and his reasonable interpretation of the statute – which this Court largely adopted – furthered the goals of the statute and is consistent with the public policy aims of the Legislature.

In addition, the legislative history suggests the Legislature only intended to allow a prevailing buyer to recover fees. *See* Dkt. 96-3 at 76-78 (Assembly Third Reading) (explaining the DSCA "[p]rovides *for a buyer* injured by violation of this chapter to bring action for recovery of damages, up to three times the contract amount plus reasonable attorney fees" (emphasis added)); *id.* at 111-12 (Concurrence in Senate Amendments) (explaining the DSCA "[e]nables *aggrieved buyers* to bring action for treble damages and attorney fees" (emphasis added)).

Analogous statutory schemes are instructive in considering whether a fee award against a consumer would be justified here. For fee-shifting statutes enacted to advance important individual rights and public policy goals, the courts have established a "good faith"-style standard to determine whether prevailing defendants are entitled to fees. The standard, articulated by the U.S. Supreme Court in *Christiansburg Garment Co. v. Equal Emp. Opportunity Comm'n*, 434

1   U.S 412, 421 (1978), supports a conclusion that fees for a prevailing defendant are warranted

2   only where the case involved "unreasonable, frivolous, meritless or vexatious" claims. *Id.*

3   *Christiansburg* involved a Title VII case, but other civil rights statutes have adopted a similar

4   approach. *See, e.g.*, *Cummings v. Benco Bldg. Servs.*, 11 Cal. App. 4th 1383, 1388 (1992)

5   (denying fees to a prevailing defendant in a FEHA matter where there was no finding that the

6   case was "frivolous, unreasonable nor groundless."); *Jankey v. Lee*, 55 Cal. 4th at 1047

7   (explaining that "the ADA allows defendants fees only for responding to frivolous claims and

8   makes fee recovery discretionary"). Like anti-discrimination statutes, this Court has recognized

9   that the "enforcement of the California consumer protection laws" like the UCL and CLRA (and

10  DSCA) qualifies as "an important right affecting the public interest." *MacDonald v. Ford Motor

11  Co.*, 142 F. Supp. 3d 884, 895 (N.D. Cal. 2015) (citing *Henderson v. J.M. Smucker Co.*, No. CV

12  10-4524-GHK VBKX, 2013 WL 3146774, at *10 (C.D. Cal. June 19, 2013)).

13      In adopting this good-faith standard, courts have recognized the rationale supporting the

14  U.S. Supreme Court's conclusion that "such awards should be permitted not routinely, not simply

15  because he succeeds." *Christiansburg*, 434 U.S. at 421. Namely, courts are cognizant of the

16  chilling effect prevailing-defendant fee awards would have on litigation. "In applying these

17  criteria, it is important that a district court resist the understandable temptation to engage in *post

18  hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must

19  have been unreasonable or without foundation. This kind of hindsight logic could discourage all

20  but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success."

21  *Id.* at 421-22; *see also Rosenman v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro*,

22  91 Cal. App. 4th 859, 874 (2001) ("Any other standard would have the disastrous effect of

23  closing the courtroom door to plaintiffs who have meritorious claims but who dare not risk the

24  financial ruin caused by an award of attorney fees if they ultimately do not succeed.").[12]

25  ─────────────────

26  [12] This is particularly true where, as here, compensatory damages for a plaintiff would be
    relatively modest – which is why many consumer protection statutes include treble damages and
    attorneys' fees provisions for a prevailing plaintiff. *See Patel v. Mercedes-Benz USA, LLC*, 43

27  Cal. App. 5th 1007, 1017-18 (2019). Though the DSCA does not include a one-way fee-shifting
    provision, it nonetheless demonstrates a legislative intent to encourage the vindication of

28  consumer rights by providing for attorneys' fees for an aggrieved buyer.

─────────────────
14

1    Plaintiff's claims were not frivolous.[13] As the Court's Order acknowledged, the limited

2    law relating to Plaintiff's contentions about Tawkify's obligations actually supported his position.

3    *See* Order 11, citing *Howell v. Grindr (Howell II)*, 2016 WL 1668243, at *1 (S.D. Cal. Apr. 27,

4    2016). Though the Court concluded that the decision was not persuasive, it nevertheless noted

5    that the *Howell II* court applied the ten-day timeframe to a refund made pursuant to section

6    1694.2. Nor did Plaintiff litigate this case unreasonably. Plaintiff litigated his claims – and hoped

7    to litigate the claims of the putative class – in the normal course and in proportion to Tawkify's

8    defenses, and consistent with his fiduciary duties and this Court's expectations. These facts do not

9    support an award of fees to Tawkify. *See Rosenman*, 91 Cal. App. 4th at 873-74 (where "plaintiff

10   presents a colorable claim, and the adverse jury verdict "is less than unanimous," fees to a

11   defendant are "inappropriate" in light of FEHA's strong public policy objectives).

12       It is also important that this case was filed as a class action. Plaintiff sought to represent a

13   national class of consumers who were subject to a common, unlawful policy and bound (and

14   protected) by the DSCA due to a choice of law provision that Tawkify incorporated in its Terms

15   of Use. The Court converted Tawkify's motion to dismiss Plaintiff's class action into a motion for

16   summary judgment of Plaintiff's individual claims. As a result, Plaintiff did not have the chance

17   to prosecute his claims on behalf of other consumers.

18       Courts disagree about the responsibility of a class representative to bear the litigation costs

19   in an unsuccessful action, though the chilling effect of such a rule is universally recognized. This

20   is why most courts have concluded that a class representative is not responsible for the entire

21   costs of a class action largely benefitting strangers – either as a practical matter or as a matter of

22   justice. *See In re Oracle Securities Litigation*, 136 F.R.D. 639, 643 (N.D. Cal. 1991) (such a rule

23   would be impractical and "at odds with Rule 23"); *Rand v. Monsanto Co.*, 926 F.2d 596, 599, 601

24   (holding that "a district court may not establish a per se rule that the representative plaintiff must

25   be willing to bear all (as opposed to a pro rata share) of the costs of the action"), *overruled on*

26

27   ---
     [13] The Court implicitly acknowledged that Plaintiff's claims were not frivolous. In its comments
     at the hearing on March 25, 2021, at which it noted that there was a "50-50 chance" that

28   Defendant's summary judgment motion would be granted and that "it could go either way." *See*
     Mar. 25, 2021 Tr. at 46:10-12.

1   *other grounds by Chapman v. First Index, Inc.*, 796 F.3d 783, 787 (7th Cir. 2015). Even in

2   instances where class representatives have been found to be responsible for costs, courts have

3   declined to award them in the interest of justice. *See Van de Kamp v. Bank of Am.*, 204 Cal. App.

4   3d 819, 869-70 (1988) ("Although plaintiffs have lost the battle, they have won the war;

5   defendant—at least in part spurred on by this lawsuit—has changed its practices to afford

6   plaintiffs the benefits sought by this lawsuit. Under the circumstances, it would be inequitable to

7   impose further costs upon plaintiffs." (citations omitted)).

8       The same analysis applies here. While it is true that Plaintiff sought to vindicate his rights,

9   he also took seriously his role in seeking to enforce a consumer protection statute on behalf of

10  others. An award of fees against him would undermine the purposes of the DSCA and of class

11  actions more generally.

12      **C.  Tawkify Requests Fees for Unsuccessful and Unnecessary Motions.**

13      From the outset of this case, much of the time Tawkify spent in this litigation involved

14  patently unnecessary work or wasteful litigation tactics intended, by Tawkify, to avoid any public

15  inquiry into the company's general lack of compliance with the DSCA. Tawkify falsely

16  characterizes Plaintiff's conduct as unreasonable and "aggressive and unrelenting," but Plaintiff

17  only followed the Court's rules and attempted to litigate the matter on the merits. Tawkify, on the

18  other hand, pursued numerous unsuccessful tactics in the brief duration of this litigation.

19      **1.  Tawkify's Removal**

20      At the outset, Tawkify demonstrated its unreasonableness in litigating this action. It

21  removed the case without providing sufficient information to establish this Court's jurisdiction

22  under the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA"). Tawkify then refused

23  Plaintiff's reasonable request to provide information establishing that jurisdiction (Dkt. 9-01),

24  forcing Plaintiff to file to a motion to remand. Dkt. 9. Tawkify then filed that information under

25  seal to the Court, and again refused to provide it to Plaintiff. Dkt. 18-01. The Court denied the

26  motion to seal (Dkt. 22), noting that "defendant's obstinance" precluded Plaintiff from avoiding

27  motion practice. *Id.* at 4. After Tawkify was ordered to provide the unredacted testimony,

28  Plaintiff subsequently withdrew the remand motion. Tawkify seeks recovery for at least 30.9

1   hours of time spent on the Removal Papers (a five-page *pro forma* pleading) and recovery for at

2   least 52.8 hours of time related to removal.[14]

3                              **2.  Tawkify's Motion to Compel Arbitration**

4          Tawkify unsuccessfully moved to compel arbitration based on an arbitration provision that

5   the Court found was both procedurally and substantively unconscionable. Dkt. 46. The Court's

6   conclusion that the lack of detail in the arbitration clause (noting that it created a "heavy burden

7   of uncertainty and expense effectively eviscerated any remedy to the ordinary consumer user"

8   (Order at 6)) further supports the reasonability of Plaintiff's decision to bring his claims in a non-

9   arbitral forum and the lack of justification for Tawkify to have challenged that forum. Tawkify

10  seeks recovery for a breathtaking 263.8 hours of time for work related to this motion, which it lost

11  and the appeal of which it has abandoned.

12                             **3.  Tawkify's Unsuccessful Motion to Stay**

13         Following the Court's Order denying arbitration, Tawkify then moved unsuccessfully to

14  stay the proceedings pending its appeal of the Motion to Compel Arbitration. The Court denied

15  the Motion and noted that "the applicant has not made a strong showing that it is likely to succeed

16  on the merits on appeal and the applicant has not made a showing it will be irreparably injured

17  absent a stay." ECF Dkt. 62. Tawkify seeks recovery for at least 55.1 hours of time for work

18  related to this motion.

19                  **4.  Tawkify's Abandoned Appeal of the Order Denying Arbitration**

20         Tawkify appealed the Court's order denying the motion to compel arbitration to the Ninth

21  Circuit Court of Appeals. ECF Dkt. 55. However, on October 12, 2021, Tawkify voluntarily

22  dismissed its appeal.[15]

23                             **5.  Tawkify's Motion to Dismiss.**

24         Tawkify filed a Motion to Dismiss under Fed. R. Civ. Proc. 12(b)(6) which this Court

25

26  [14] Due to Tawkify's heavily-redacted time entries and extensive use of "block-billing" it is
    difficult to determine exactly how many hours its counsel claim were spent on each task.

27  [15] On October 12, 2021, Tawkify counsel informed Plaintiff's counsel that as a result of the
28  abandoned appeal, it would not seek fees related to the appeal of the Order denying its motion to
    compel arbitration. Schreiber Decl. Ex. G.

1    converted into a motion for summary judgment and ordered the parties to engage in individual

2    discovery. As the Court explained during the hearing on the motion, Tawkify relied on extrinsic

3    evidence that Plaintiff could not authenticate, such as its own internal documents, and

4    communications between Plaintiff and Tawkify. After the Court ordered individual discovery, it

5    became clear that the evidence Tawkify submitted as part of its motion was incomplete. Notably,

6    Tawkify had withheld from the Court Plaintiff's earliest cancellation and refund requests and

7    Tawkify's acknowledgement of those requests. Tawkify seeks recovery for at least 144.6 hours of

8    time related to this motion.

9                        **6.  Tawkify's Current Motion**

10       Tawkify's intransigence continues through to this Motion. Plaintiff attempted to meet and

11   confer with Tawkify about numerous redacted entries attached to the Graham Declaration, as well

12   as other matters identified after a review of the time and cost records. Conn Decl. ¶¶ 3-5, Ex. A-B.

13       In response to a detailed email requesting a response, Tawkify instead responded on that it

14   would amend its request for fees (and costs) but that "The updated total amount of attorney's fees

15   that Tawkify seeks to recover reflecting these deductions will be stated in Tawkify's reply brief

16   for the Court's consideration." *Id*. Ex. B. In other words, Plaintiff will once again be forced to

17   spend time addressing a Tawkify position that will change after it introduces new information on

18   reply. Tawkify's approach causes needless work and is illustrative of its usual tactics.

19       Without providing any billing records, Tawkify's counsel states that it seeks recovery for

20   at least 35 hours of time for work related to this motion.

21                   **D.  Tawkify's Fees Are Unreasonable.**

22       Tawkify's requested fees are unreasonably inflated and do not reflect a good faith effort to

23   request only "[r]easonable attorney fees" under the applicable fee provision. *See* Cal. Civ. C.

24   § 1694.4(c). "[T]he prevailing party should make a good faith effort to exclude from a fee request

25   hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice

26   ethically is obligated to exclude such hours from his fee submission. . . . Hours that are not

27   properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory

28   authority." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); *see also Roberts v. Comm'r of Soc.*

1  *Sec.*, 522 F. App'x 387, 388 (9th Cir. 2013); *CoreCivic Inc. v. Candide Group LLC*, No. C-20-

2  03792-WHA, 2021 WL 1267259, at *6-7 (N.D. Cal. Apr. 6, 2021); *Harman v. City & Cty. of San*

3  *Francisco*, 136 Cal. App. 4th 1279, 1310 (2006).

4      Tawkify seeks nearly $800,000 in fees for litigation that concluded in almost exactly one

5  year with just two remote depositions, and time-limited, individual discovery. Even a cursory

6  review of Tawkify's requested fees cannot withstand scrutiny.[16] Overall, Tawkify seeks fees for

7  1,889 hours related to this litigation, which is more than **4.5 times the hours expended by**

8  **Plaintiff's counsel** and far more than was reasonable. For example, Tawkify seeks fees for 408.4

9  hours spent on just on its motion to compel arbitration and motion to dismiss. Dkt. 118-1

10  (Graham Decl. Ex. 4). This is nearly as much time as Plaintiff's counsel spent on the entire case.

11  Tawkify then seeks to recover for more than 283.3 hours of times related to its motion for

12  summary judgment, which merely required application of the facts of the case to the legal

13  arguments that Tawkify had raised (and billed for) in its motion to dismiss, billing as many as

14  51.2 hours in a single day to the case (*See* Graham Decl. Ex. 4 at 129-136.).

15      Tawkify also attempts to justify its request by falsely asserting that "it was clear from the

16  outset that Plaintiff lacked standing, any cognizable injuries or damages, [and] his case belonged

17  in arbitration." Mtn. at 2. But these assertions are contradicted by the facts, the Court's Orders,

18  and common sense. Plaintiff did not lack standing to pursue his claims. Tawkify is admittedly

19  subject to the DSCA, and entered into an agreement with Plaintiff for dating services covered by

20  the statute. Plaintiff asserted claims under the DSCA, and there is no credible claim that the

21  DSCA did not apply to his relationship with Tawkify. There is also no credence to Tawkify's

22  claim that Plaintiff lacked standing or injury at the time his complaint was filed. The Court held

23  as much (Order at 11-13) even though Tawkify remedied its violations of the law after the

24  complaint was filed. Furthermore, the Court rejected the contention that Plaintiff's claim should

25  have proceeded in arbitration, and expressly declined to rule on Plaintiff's Article III standing, as

26

27  ───────────────
   [16] Indeed, even the unreported case most heavily relied upon in Tawkify's motion, *Adelman v.*
   *Spark Networks Ltd.*, presented a mere fractional request for fees *through trial*.  No. B195332,

28  2008 WL 2108667, at *9 (Cal. Ct. App. May 20, 2008) (unreported) ($390,135.99 in fees).

1   well as his standing under the UCL and CLRA. Order at 13. Thus, Tawkify's contention that

2   Plaintiff's lawsuit was meritless cannot be taken seriously.

3          Courts may deny fee motions, where, as here, the fees sought are so unreasonably high as

4   to "shock the conscience." *See Chase Inv. Servs. Corp. v. L. Offs. of Jon Divens & Assocs., LLC*,

5   2010 WL 11597568, at *6 (C.D. Cal. June 10, 2010) ("Given the shockingly excessive nature of

6   the fee request, the Court would be well within its discretion to deny attorneys' fees altogether.").

7   The rationale supporting a complete denial of fees is to discourage the type of "bargaining"

8   overreach Tawkify displays here. As explained by the Seventh Circuit in *Brown v. Stackler*, 612

9   F.2d 1057, 1059 (7th Cir. 1980), denying a request for an outrageously unreasonable amount

10  dissuades parties from making "unreasonable demands, knowing that the only unfavorable

11  consequence of such misconduct would be a reduction of their fee to what they should have asked

12  for in the first place." *See also Fair Housing Council of Greater Washington v. Landow*, 999 F.3d

13  92, 96 (4th Cir. 1993).

14         In *Chase*, the district court found a request for over $144,000 in fees for "a straight-

15  forward interpleader action lasting four months…patently unreasonable on its face." *Id.* at 6

16  ("Many of the fees requested by Plaintiff can only be the result of enormous duplication of

17  efforts, inexcusable inefficiencies, or overreaching."). Similarly, Tawkify's use of multiple,

18  experienced lawyers billing scores (and oftentimes hundreds) of hours on routine motions is an

19  overreach that shocks the conscience. "Especially where hourly fees are high, there is 'an

20  expectation that [counsel] will complete tasks efficiently and that its more senior attorneys will

21  limit their involvement to tasks requiring their level of expertise.'" *CoreCivic Inc.*, 2021 WL

22  1267259, at *7 (quoting *Wynn v. Chanos*, No. 14–CV–04329–WHO, 2015 WL 3832561, at *3

23  (N.D. Cal. June 19, 2015), *aff'd*, 685 F. App'x 578 (9th Cir. 2017)). In the past, the Court "has

24  already made clear that overreach for fees warrants denial." *In re Glob. Equity Mgmt. (SA) Pty.*

25  *Ltd.*, No. C 17-02177 WHA, 2020 WL 4732210, at *1 (N.D. Cal. Aug. 15, 2020).

26         By contrast, Plaintiff's counsel has expended fewer than 419 hours on this matter through

27  the date of the summary judgment Order. Conn Decl. ¶ 6; Schreiber Decl. ¶ 8. Here, where

28  Tawkify seeks more than 4.5 times the hours expended by Plaintiff, its "greed and overreach" is

1    clear, and the motion should be denied.  *In re Glob. Equity*, 2020 WL 4732210, at *4.

2                **E.  Tawkify's Request for Costs Is Untimely, Improper, and Unjustified.**

3           In one sentence, Tawkify's Motion requests $27,418.02 in costs. Because this request is

4    improperly sought, unreasonable, and unjustifiable, the Court should deny the request.

5                     **1.  Tawkify Has Waived Costs.**

6           As an initial and critical matter, Tawkify failed to file a bill of costs. *See* N.D. Cal. Form

7    CAND 133 (https://www.cand.uscourts.gov/cand-133_2-15-17). Because it was required to do so

8    under Civil Local Rule 54-1 and Federal Rule of Civil Procedure 54 with 14 days of judgment, its

9    request for costs should be denied as untimely and improperly sought. Civ. L. R. 54-1(a), (c)

10   (requiring that "a prevailing party claiming taxable costs must serve and file a bill of costs" not

11   "later than 14 days after entry of judgment" and instructing that any party that fails to do so "will

12   be deemed to have waived costs"); *see also* Fed. R. Civ. Proc. 54(d)(1). Tawkify failed to file a

13   bill of costs, and as such has waived costs.

14          Even if the Court were to entertain Tawkify's request for costs, the request is inadequate

15   on its face. To support an expense award, Tawkify "must file an itemized list of their expenses by

16   category and the total amount advanced for each category to permit a court to assess whether the

17   expenses are reasonable." *MacDonald v. Ford Motor Co.*, 2016 WL 3055643, at *10 (N.D. Cal.

18   May 31, 2016) (denying request for reimbursement of expenses and costs because counsel "did

19   not provide an itemized list of their expenses by category and failed to support their expenses

20   with receipts"). Here, Tawkify has failed to itemize its expenses and has scattered apparent

21   receipts within a voluminous declaration of detailed *time* records. The resulting mess does not

22   satisfy even the minimum effort required to receive an award of costs.

23                     **2.  Tawkify's Requested Costs are Unreasonable.**

24          The amount of costs requested is grossly unwarranted. This case, litigated in its entirety in

25   approximately one year, involved no travel, included only remote appearances for hearings, and

26   involved only two depositions. Furthermore, the cost attributed by Defendant to those two

27   depositions far exceeds what is customary or ordinary for such a service. As described below,

28

1    Tawkify improperly seeks recovery of the following non-recoverable and/or unreasonable costs.[17]

2           ***Electronic Research Costs are not Recoverable.*** Tawkify seeks electronic legal research

3    costs of $12,021.30. Dkt. 118-1 (Graham Decl. Ex. 4 at 34, 43, 44, 89, 90, 103, 104, 115, 132).

4    Electronic legal research goes beyond Local Rule 54-3. *See, e.g.*, *City of Alameda v. Nuveen Mun.*

5    *High Income Opportunity Fund*, No. C 08-4575 SI, 2012 WL 177566, at *6 (N.D. Cal. Jan. 23,

6    2012) ("this cost is not recoverable, whether it is characterized as legal research or 'the cost of

7    reproducing copies of motions, pleadings, notices, and other routine case papers' under Civil

8    Local Rule 54–3(d)(3)"); *see also Ladas v. California State Auto. Assn.*, 19 Cal. App. 4th 761,

9    776 (1993) ("Fees for legal research, computer or otherwise, may not be recovered under section

10   1033.5.").

11          ***Courtesy Copies are Not Recoverable***. Tawkify seeks $1,125.85 in "courtesy copy" costs.

12   Dkt. 118-1 (Graham Decl. Ex. 4 at 45, 91, 105, 153, 155). During normal times, "the delivery of

13   courtesy copies of filings are usual costs of litigation" *Gutierrez v. Wells Fargo Bank, N.A.*, No. C

14   07-05923 WHA, 2010 WL 5025663, at *1 (N.D. Cal. Dec. 3, 2010), *amended*, No. C 07-05923

15   WHA, 2011 WL 115481 (N.D. Cal. Jan. 13, 2011). But this lawsuit was filed after the beginning

16   of the COVID-19 pandemic and issuance of numerous General Orders suspending the

17   requirements for chamber copies. *See, e.g.*, General Order No. 72 ("All local rules requiring that a

18   courtesy copy be provided to the chambers of the assigned judge are suspended pending further

19   notice, unless a judge orders otherwise in a specific case.") Tawkify should not be rewarded for

20   ignoring the Local Rules.

21          ***Costs Related to a Voluntarily Withdrawn Appeal are Not Recoverable***. Tawkify

22   voluntarily withdrew its appeal of the Court's Order denying Tawkify's Motion to Compel

23   Arbitration. As such, the claimed transcript cost of $441.65 does not fall under any of Local Rule

24   54-3(b)'s exceptions and is not allowed. Dkt. 118-1 (Graham Decl. Ex. 4 at 69). The same is true

25   _____

26   [17] Even if the Court chose to apply California Code of Civil Procedure section 1033.5 in the
     analysis of Tawkify's costs, it would still be improper to award Tawkify its costs. Under section
     1033.5, Tawkify must show that the costs are "reasonably necessary to the conduct of the
27   litigation rather than merely convenient or beneficial to its preparation," and "reasonable in
     amount." Code Civ. Proc. § 1033.5(c); *see also Thon v. Thompson*, 29 Cal. App. 4th 1546, 1548
28   (1994). It has failed to do so. A court may disallow recovery of a cost if it finds it to be
     unnecessary or unreasonable. *See Teichner v. Klassman,* 240 Cal. App. 2d 514, 524-25 (1996).

for the $505.00 filing fee, *id.* at 92, and the $999.12 "copy, binding, and delivery" cost, *id.* at 156.

***Tawkify Should Not Recover Filing Fees from Unrelated Cases***. Tawkify has the audacity to seek recovery of a $593.95 filing fee for the filing of the complaint in an unrelated case called *Tawkify v. Three Day Rule, Inc*. Dkt. 118-1 (Graham Decl. Ex. 4 at. 106). *See* RJN, Ex. A (Complaint, *Tawkify Inc. v. Three Day Rule, Inc.* (San Francisco Superior Ct. Case No. CGC-21-590438), filed Mar. 17, 2021). Tawkify should not be able to seek recovery in this case for costs incurred in unrelated litigation.

***Deposition Costs Should Be Limited to What is Allowed Under Local Rule 54-3(c)***. Tawkify seeks recovery of $11,361.29 for two depositions. Dkt. 118-1 (Graham Decl. Ex. 4 at 133, 145). Local Rule 54-3(c)(1) limits recoverable deposition costs to "The cost of an original and one copy of any deposition (including videotaped depositions) taken for any purpose in connection with the case is allowable." In addition to the "Original & One" costs of $3,572.38 and $849.60, Tawkify also seeks "realtime" costs, a "rough draft," "appearance fees," "iPad Rental," and additional Realtime and remote set-up fees.

Collectively, Plaintiff's counsel expended only $10,155 in costs. Schreiber Decl. ¶ 9; Conn Decl. ¶ 6. To the extent that the Court is inclined to grant costs, the costs awarded should be far more limited. Plaintiff does not believe any costs are warranted or justified beyond (1) the two filing fees incurred in this case of $400.00 and $562.00 (ECF Dkt. 118-1 (Graham Decl. Ex. 4 at 35, 45), the transcript for the March 25, 2021 hearing (*id.* at 96); and the necessary deposition costs of $5,119.61 and $1,565.46 respectively for the two depositions taken. *Id.* at 133, 145.

### 3. An Award Of Costs Against Plaintiff Would Undermine Public Policy Goals.

The Court should exercise its discretion to deny costs to Tawkify because an award of costs would be unjust and contrary to the same public policy concerns cited above. Federal Rule of Civil Procedure 54(d)(1) provide the Court with the discretion to deny costs to a prevailing party. Courts have consistently held that a district court has discretion to refuse to award costs. *Ass'n of Mexican–Am. Educators v. California* (*AMAE*), 231 F.3d 572, 591 (9th Cir. 2000). Among the factors to be considered are an economic disparity between the parties and the lowing

1   party's limited financial resources, "the chilling effect of imposing . . . high costs on future civil

2   rights litigants, and whether the issues raised were close and complex. *Id*. at 593 (quoting *Stanley*

3   *v. Univ. of S. Cal.*, 178 F.3d 1069, 1079 (9th Cir. 1999) (holding that the district court abused its

4   discretion in rejecting a civil rights plaintiff's motion to deny costs to the defendant without

5   considering the plaintiff's limited financial resources and the chilling effect on future civil rights

6   litigants of imposing high costs)).

7         This court has previously declined to award costs to a prevailing party for many of the

8   same reasons present here, including when the losing party has limited financial resources. *See*

9   *National Org. for Women v. Bank of Cal.*, 680 F.2d 1291, 1294 (9th Cir. 1982); *Wrighten v.*

10  *Metropolitan Hosps., Inc.*, 726 F.2d 1346, 1358 (9th Cir. 1984); *Moore v. Hughes Helicopters,*

11  *Inc.*, 708 F.2d 475, 486 (9th Cir. 1983). Courts have also declined to award costs where there was

12  misconduct on the part of the prevailing party. *AMEA*, 231 F.3d at 592. As Tawkify blatantly

13  ignored the DSCA, its misconduct should not be rewarded by an award of costs.

### 4. An Award Of Costs Would Be Unjust.

15        Should the clerk tax costs or the Court determine that an award of costs is legally

16  permissible, the Court should exercise its discretion to deny or limit the amount of such an award.

17        Even if the Court allows an award of costs to Defendant, the Court should exercise its

18  discretion to defer any ruling on costs until after the appeal. "If an appeal on the merits of the case

19  is taken, the court may rule on the claim for fees, may defer its ruling on the motion, or may deny

20  the motion without prejudice, directing under subdivision (d)(2)(B) a new period for filing after

21  the appeal has been resolved." Fed. R. Civ. Proc. 54(d) advisory committee notes on 1993

22  amendments. Courts within the Ninth Circuit, including this Court, have applied this committee

23  note to claims for costs as well as claims for fees. *See e.g.*, *CoreCivic Inc.*, 2021 WL 1267259, at

24  *7 ("hold[ing] in abeyance the final calculation of fees pending resolution of the current appeal").

25        Accordingly, assuming the Court determines that Defendant should receive any costs at

26  all, Plaintiff respectfully requests that the Court make no until after a decision on the appeal.

27

28

### F.  An Award of Fees or Costs Would Be Unjust and Financially Ruinous for Plaintiff.

The ends of justice would be subverted by awarding fees to Tawkify. Plaintiff here sought to vindicate not only his rights but the rights of other consumers who had paid such significant sums for a service that was, in his estimation, an expensive bait-and-switch.

As described above, an award of fees and/or costs would be unjust because of Plaintiff's individual financial circumstances. Plaintiff is a single father of two with an elementary-school aged child. Stanfield Decl. ¶ 11. He had high expectations for an expensive product, and was gravely disappointed with the service, which was exacerbated by the company's treatment of his concerns. *Id.* ¶¶ 3-5. While Plaintiff regrets the tone of his communications, he states that he did not feel his concerns were taken seriously, which is why he claimed he would sue. *Id.* ¶ 4. Plaintiff testifies that he has limited means to pay fees and costs of any amount, let alone the amount sought here by Tawkify. Stanfield Decl. ¶¶ 6-15.

Because an award of fees and/or costs would be financially ruinous for Plaintiff, it would be unjust. The Court may consider such factors where fee awards are discretionary. For example, in a case brought under the Brown Act, Cal. Civ. C. § 54960.5, the Court of Appeal explained that a prevailing plaintiff under a discretionary fee statute may not receive an award of fees where justice so requires. *See Common Cause v. Stirling*, 119 Cal. App. 3d 658, 665 (1981) ("A court must still thoughtfully exercise its power[,] . . . examining all the circumstances of a given case to determine whether awarding fees under the statute would be unjust . . . .").

The Court should exercise its discretion to avoid an unjust result here. Tawkify is a multi-million-dollar company that willfully ignored the seminal law of its industry, in its home state (and the state law it imposes on its customers around the country). Plaintiff is an individual who sued to help a class of other consumers. He should not have his life ruined for seeking protection from the law that was designed to help him, even if his interpretation of the DSCA differed from the Court's.

## IV.  CONCLUSION

For the foregoing reasons, this Court should deny the Motion for Award of Attorneys' Fees and Costs.

1

2    Dated: October 14, 2021                    Respectfully submitted,

3                                               OLIVIER SCHREIBER & CHAO LLP

4                                               CONN LAW, PC

5                                               */s/ Christian Schreiber*
                                               Christian Schreiber

6
                                               *Attorneys for Plaintiff*
7                                               *JEREMY STANFIELD*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR ATTORNEYS' FEES AND COSTS
CASE NO. 3:20-cv-07000-WHA